IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HENRY GRISBY III, | ) | No. 71904-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT HERZOG, Superintendent, | ) | |
| Monroe Correction Complex, BERNARD | ) | PUBLISHED OPINION |
| WARNER, Secretary, Department of | ) | |
| Corrections. | ) | FILED: October 26, 2015 |
| | ) | |
| Appellants. | ) | |

BECKER, J. — The procedural protection due to an individual who faces revocation of community custody status includes, in some cases, the right to be represented by counsel at the revocation hearing. Whether counsel is appropriate in a particular case is up to the discretion of the hearing authority. We disagree with a previous Court of Appeals opinion allowing the Department of Corrections to exclude counsel from all such hearings.

## FACTS

Respondent Henry Grisby was convicted in 2010 for delivering cocaine. The standard sentencing range for his offense would have been 60 to 120 months. Instead, the court imposed a prison-based special drug offender alternative sentence of 45 months of confinement and 45 months of community

custody. See RCW 9.94A.660(3); RCW 9.94A.662. The sentence included, as required by the statute, a condition that Grisby not use illegal controlled substances and a condition requiring him to submit to urinalysis. RCW 9.94A.662(1).

In January 2013, having completed 45 months in confinement, Grisby was released into community custody. In that new status, he continued to be supervised by the Department of Corrections. See RCW 9.94A.704(1). The sentencing statute provides that if the Department finds that the offender has willfully violated conditions of community custody, "the offender may be reclassified to serve the remaining balance of the original sentence." RCW 9.94A.662(3).

This appeal arises from an incident that occurred in December 2013. Grisby reported to his community custody officer to provide a urine sample. The officer alleged that Grisby violated the terms of his sentence in two ways: by using a device to alter a urine test and by failing to provide a urine sample. Grisby was taken into custody. A revocation hearing was held on January 8, 2014, to determine whether Grisby should be returned to prison to serve the remainder of his sentence, about three years. Grisby was not represented by counsel at this hearing. At the hearing, Grisby asked to call a particular witness who he believed was involved in an investigation pertinent to the alleged violation. With Grisby's permission, the hearing officer spoke to the witness ex parte about the pending investigation. The hearing officer then found Grisby had

committed both violations. The hearing officer revoked Grisby's community custody status.

Grisby successfully appealed to the Department's appeals panel. The panel reversed and remanded for a new hearing on the ground that Grisby could not validly agree to allow the hearing officer to have an ex parte contact with the witness.

On February 20, 2014, the Department held a second violation hearing. By this time, Grisby had consulted with attorney Robert Boruchowitz. Boruchowitz, a professor at the Seattle University School of Law, was supervising a student clinic on the right to counsel at the time, and he agreed to work on Grisby's case pro bono with the assistance of his students as Rule 9 interns. At the hearing, Grisby stated that his attorneys had asked him to request appointed counsel for the hearing. He claimed the Department had the obligation to consider such a request on a case-by-case basis "per case law Gagnon v. Scarpelli[1] and State v. Ziegenfuss.[2]" Apparently familiar with this line of cases, the hearing officer asked Grisby what would separate his case from another case so as to justify appointment of counsel. "What would be the need in your circumstance that would require you to have counsel?" Grisby responded that he faced losing many months of his life back to prison. The hearing officer declined to appoint counsel. The hearing proceeded.

---

[1] 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).
[2] 118 Wn. App. 110, 74 P.3d 1205 (2003), review denied, 151 Wn.2d 1016 (2004).

The officer found Grisby "not guilty" of failing to submit a urine test but "guilty" of trying to alter the urine test. Again, the sanction imposed was revocation of Grisby's community custody status. Grisby's appeal to the appeals panel was denied on March 4, 2014. The appeals panel commented that Grisby had not followed the correct procedure for having counsel appointed:

> First of all Mr. Grisby, it is obvious by listening to the recording of the hearing, Hearing Officer Paul Ockerman explained very clearly to you the process that your attorney needed to follow if you were to be allowed to have such representation. He asked you if your attorney had submitted a written request to the Hearings and Violations Administrator and you said that he had not. Secondly, Hearing Officer Ockerman gave you the opportunity to continue the hearing to allow for this and you clearly stated that you did not want to do so, stating you believed that you would receive a fair and impartial hearing. You made the decision to proceed with the hearing.

Boruchowitz, representing Grisby, sent a letter to the hearings and violations administrator asking that Grisby's case be remanded for a third violation hearing. The letter alleged that the hearing officer stated erroneously that he lacked the discretion to send Grisby to previously scheduled inpatient treatment. The letter also alleged that Grisby had been denied the right to call as a witness a particular officer who had given a written statement. The officer had reported as unavailable for the February 20 hearing. Boruchowitz argued that the hearing should have been continued to permit Grisby to question the officer about inconsistencies between the officer's statement and the statement of

another witness. On April 4, 2014, the hearings and violations administrator granted Grisby's appeal on that ground and remanded for a third hearing.

Boruchowitz wrote to the Department, "We understand that DOC [Department of Corrections] has a process for requesting counsel. We plan to represent Mr. Grisby at the hearing. Please advise us as to the process of requesting to represent Mr. Grisby at his hearing, including any necessary forms." The next day, Ronda Larson, assistant attorney general representing the Department, informed Boruchowitz that his request to represent Grisby at the hearing could not be accommodated. Although the hearing officer and appeals panel had indicated there was a procedure for requesting the right to be represented by counsel at the hearing, Larson's letter categorically negated that possibility. She stated, "In a DOSA revocation hearing, there is no right to counsel. In re Pers. Restraint of McNeal, 99 Wn. App. 617, 635, 994 P.2d 890 (2000)."

Larson's letter continued:

DOSA revocation hearings are legally distinct from probation and parole revocation proceedings in Washington. The latter are prosecuted by the State by way of the county prosecutor. Therefore, it would create an uneven playing field to disallow offenders in probation and parole revocation proceedings to be represented by counsel. Hence, court rule requires offenders to be represented by counsel in such proceedings. See CrR 7.6(b) (requiring counsel at probation revocation hearings).

In contrast, DOSA revocation hearings under the Offender Accountability Act[3] (OAA) involve a non-attorney corrections officer bringing a violation allegation. The hearing is not in a court before a judge but instead in a conference room before a non-attorney hearings officer. Because neither the offender nor the corrections officer who alleges the violation is an attorney, the contest is among equals.

And the OAA created the administrative hearing system without attorneys and judges for the very purpose of simplifying violation hearings. Prior to the OAA, violations hearings occurred in court before a judge, with both parties represented by counsel. The result was lengthy delays and concomitant lengthy pre-hearing jail time for offenders. This delay was not to the offenders' benefit, and as a result, the legislature adopted the current system by enacting the OAA.

(Footnote omitted). Larson's letter advised Boruchowitz that one attorney would

be allowed to attend Grisby's next hearing as an observer if approved in

---

[3] The "offender accountability act" is the title given by the legislature to a 20-section bill enacted in 1999. LAWS OF 1999, ch. 196, § 18.

As early as 1988, the Department had authority to hold hearings and impose sanctions for violations of community custody.

If an inmate is accused of violating any condition or requirement of community custody, he or she is entitled to a hearing before the department prior to the imposition of sanctions. The hearing shall be considered as inmate disciplinary proceedings and shall not be subject to chapter 34.04 RCW. The department shall develop hearing procedures and sanctions.

LAWS OF 1988, ch. 153, § 4; former RCW 9.94A.205(3).

The 1999 enactment known as the offender accountability act added to the above a section requiring the Department to develop its hearing procedures by rule, and it specified a number of procedures to be included. Relevant here, the statute did not require the Department to consider appointing counsel:

(d) The offender shall have the right to: (i) Be present at the hearing; (ii) have the assistance of a person qualified to assist the offender in the hearing, appointed by the hearing officer if the offender has a language or communications barrier; (iii) testify or remain silent; (iv) call witnesses and present documentary evidence; and (v) question witnesses who appear and testify.

LAWS OF 1999, ch. 196, § 8(4).

6

advance, but the attorney would not be allowed to communicate with Grisby at the hearing or during any break.

Boruchowitz immediately filed a petition on Grisby's behalf in Snohomish County Superior Court. The petition asked the court to compel the Department to consider whether to appoint Boruchowitz as counsel for Grisby. Boruchowitz argued counsel was necessary because Grisby was unskilled and had a number of mental health issues that hindered his ability to present his defense effectively on his own. He also asserted that a person facing a revocation hearing is entitled to be represented by retained or pro bono counsel even if the Department in a proper exercise of its discretion denies appointed counsel. The Department opposed the petition.

After a hearing on April 17, 2014, the trial court granted Grisby's request by issuing writs of mandamus and prohibition. The court ruled that the Department was obligated to conduct a case-by-case determination of the need for appointed counsel—not only in Grisby's case, but in all similar cases when a request for a lawyer is made by a person subject to a community custody violation hearing. The court relied on State v. Ziegenfuss, 118 Wn. App. 110, 74 P.3d 1205 (2003), review denied, 151 Wn.2d 1016 (2004). The order stated:

> The Petition for a Writ of Mandamus and Writ of Prohibition is GRANTED. It is hereby ORDERED:
> I. The Department of Corrections shall conduct a determination as contemplated by State v. Ziegenfuss, 118 Wn. App. 110 (2003) whether counsel should be appointed for Mr. Grisby to represent him in his Drug Offender Sentencing Alternative violation hearing. In making that determination the Department should take into account Mr. Grisby's mental health condition.
> II. Should the Department of Corrections determine in the exercise of its discretion pursuant to Ziegenfuss, supra, that counsel need

7

not be appointed for Mr. Grisby, the Department shall permit Mr. Grisby's pro bono retained counsel, Robert C. Boruchowitz and his law student interns, to represent Mr. Grisby at any hearings it conducts regarding Mr. Grisby.

III. The Department of Corrections shall not conduct a Drug Offender Sentencing Alternative violation hearing for Mr. Grisby without permitting counsel to represent him.

IV. The Clerk shall provide at public expense a certified copy of this Order to counsel for the Petitioner and an uncertified copy to counsel for the Respondents.

V. The Department of Corrections should conduct a case by case determination of the need for appointed counsel as contemplated by State v. Ziegenfuss in similarly situated cases when a request for a lawyer is made by the person subject to a community custody violation hearing.

The above-quoted order of April 17, 2014, is the subject of this appeal.

The third hearing occurred on April 21, 2014, before a different hearing officer. The parties have separately moved to supplement our record with the transcript and order from that hearing, and we grant the parties' motions. At the hearing, Boruchowitz and two students represented Grisby. A community corrections officer represented the Department. On the issue of guilt, the result was the same as at the second hearing. The hearing officer found Grisby guilty of using a device to alter a urine test and not guilty of failing to provide a urine test. But instead of sanctioning Grisby by returning him to prison for the remaining three years of his sentence, the hearing officer ordered him released to a 30-day treatment program.

## MANDAMUS—CLEAR DUTY TO ACT

On appeal, the Department challenges the trial court order on the ground that mandamus was inappropriate. A writ of mandamus must satisfy three elements: (1) the party subject to the writ is under a clear duty to act; (2) the

8

applicant has no plain, speedy, and adequate remedy in the ordinary course of law; and (3) the applicant is beneficially interested. RCW 7.16.160, .170. Relying on McNeal, the Department maintains that it does not have a clear duty to consider whether a particular offender is, as a matter of due process, entitled to appointed counsel in a community custody revocation hearing. Relying on Ziegenfuss, Grisby responds that the Department does have that clear duty.

The Department's appeal requires us to choose between McNeal and Ziegenfuss. Though both cases are from Division One of the Court of Appeals, they are inconsistent in their interpretation of Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

As a preface to our discussion of Scarpelli, we point out that we are not concerned here with the Sixth Amendment. The Sixth Amendment provides as follows:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and *to have the Assistance of Counsel for his defence.*

U.S. CONST. amend. VI (emphasis added). The Sixth Amendment right to counsel is the foundation for the right of an indigent defendant to have counsel appointed at state expense in a criminal prosecution. Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963); Argersinger v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). The focus of the Sixth Amendment right to counsel inquiry is whether the event for which the defendant argues counsel is

necessary is a "critical stage" of the criminal prosecution. State v. Harell, 80 Wn. App. 802, 804, 911 P.2d 1034 (1996). Revocation of a postconviction status like community custody is not a critical stage of prosecution, so the Sixth Amendment right to counsel does not attach. See Scarpelli, 411 U.S. at 781.

After conviction, an individual who does not have a Sixth Amendment right to counsel may invoke the due process clause of the Fifth Amendment to obtain procedural protection when facing a loss of liberty. The minimum requirements of procedural due process along the spectrum of postconviction proceedings were set forth in a trio of decisions by the United States Supreme Court in 1972, 1973, and 1974, beginning with Morrissey v. Brewer, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

In Morrissey, two felons in Iowa filed habeas petitions alleging that the State's decision to revoke their parole without a hearing violated their right to procedural due process. The Supreme Court determined that when a parolee is suspected of violating conditions of parole, due process requires both a preliminary probable cause hearing at the time of arrest and a more comprehensive hearing before the final revocation decision. At the preliminary hearing, the offender is entitled to notice of the alleged violations, an opportunity to appear and present evidence, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. Morrissey, 408 U.S. at 487. The minimum requirements of due process at the final hearing are written notice of the claimed violations, disclosure of evidence against the offender, the opportunity to be heard in person and to present

10

witnesses and documentary evidence, to confront and cross-examine adverse witnesses, a neutral hearing body, and a written statement by the fact finders as to the evidence relied on and reasons for revocation. Morrissey, 408 U.S. at 489. Morrissey did not address the issue of legal representation. "We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." Morrissey, 408 U.S. at 489.

In Scarpelli, the Court readily extended the minimum due process requirements of Morrissey for revocation of parole to the revocation of probation because, despite minor differences, both "result in a loss of liberty." Scarpelli, 411 U.S. at 782. The more difficult issue raised by probationer Scarpelli was "whether an indigent probationer or parolee has a due process right to be represented by appointed counsel at these hearings." Scarpelli, 411 U.S. at 783. The government asked the Court to rule that "counsel need never be supplied" because the Morrissey requirements "serve as substantial protection against ill-considered revocation." Scarpelli, 411 U.S. at 786. The Court rejected this argument, recognizing that "the effectiveness of the rights guaranteed by Morrissey may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." Scarpelli, 411 U.S. at 786. At the same time, the Court decided against declaring a constitutional right to counsel in all revocation proceedings, citing concerns about costs, delays, and the loss of flexibility. Scarpelli, 411 U.S. at 787-88. The Court steered a middle course, holding that a correctional authority must undertake a case-by-case evaluation of the need for counsel in probation and parole revocation hearings:

11

> We thus find no justification for a new inflexible constitutional rule with respect to the requirement of counsel. We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

Scarpelli, 411 U.S. at 790. The Court acknowledged that the case-by-case approach formerly used to determine the Sixth Amendment right to counsel under Betts v. Brady, 316 U.S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942), overruled by Gideon, 372 U.S. 335, had ultimately been rejected in favor of a per se rule. Scarpelli, 411 U.S. at 788. The Court concluded, however, that a per se right to counsel rule was not necessary for revocation hearings in view of the limited due process right of a person who has already been convicted and sentenced.

In the third case, the Court was asked to decide what procedural protections are required in prison discipline proceedings, such as those where inmates face a loss of "good time." Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Rejecting the State's argument that prisoners have no protected liberty interest, the Court stated that prisoners have a liberty interest, albeit a lesser one than that of a probationer or parolee. The Court noted that the State has a significant interest in the orderly administration of a prison system, and it acknowledged the additional safety concerns inherent in the close proximity in which inmates and prison staff exist. The Court was

12

specifically concerned with the likelihood of retaliation against accusers or witnesses. With these concerns in mind, the Court did not include an unqualified right to a hearing or a right to confront witnesses among the minimal due process protections for prisoners. A prisoner has a right to advance written notice of the allegations against him and a written statement of the fact finder as to the evidence relied on and the reasons for the disciplinary action taken. The right to call witnesses and present documentary evidence may be afforded when not unduly hazardous to institutional safety or correctional goals. Wolff, 418 U.S. at 563-72. There is no right to counsel, but an inmate has the right to "seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff" to help him present his case if the inmate is unable to do so himself. Wolff, 418 U.S. at 570.

To summarize, Wolff sets forth the minimum due process requirements for "the discipline of infractions which occurred within the prison." Arment v. Henry, 98 Wn.2d 775, 779, 658 P.2d 663 (1983). A convicted offender who is subject to restriction but not living behind bars has a greater liberty interest than a prison inmate, and the more rigorous Morrissey requirements apply. Thus, Morrissey applies when an offender in community custody faces allegations by the Department that may result in his being returned to total confinement. Although that individual's liberty is restricted by conditions and supervision, "here we are concerned with the liberty interest of a person in the community, one who is not behind bars." McNeal, 99 Wn. App. at 633.

13

We now come to the question in this case: in a hearing to determine whether community custody should be revoked, does minimum due process include the Scarpelli requirement of a case-by-case determination of the right to appointed counsel? The McNeal court answered "no" to precisely this question, and the Department maintains that McNeal is "binding precedent."

McNeal brought a personal restraint petition after the Department returned him to prison as a sanction for violations of community custody conditions. At the time, a statute provided that a violation hearing for an offender who was serving a term of community custody was "considered as inmate disciplinary proceedings." Former RCW 9.94A.205(3) (1996), quoted in McNeal, 99 Wn. App. at 624; LAWS OF 1988, ch. 153, § 4. The Department argued that under the plain language of the statute, a community custody revocation hearing was to be treated as a prison disciplinary proceeding subject only to the minimal due process requirements of Wolff. The McNeal court determined, however, that the constitutional minimum procedural due process requirements in a community custody revocation hearing were identical to those required in Morrissey. McNeal, 99 Wn. App. at 627-34.

> Once an individual is released from prison confinement into community custody and able to be with family and friends, be employed or attend school and live a relatively normal life, that person's interest in remaining in the community is the same as a parolee's.

McNeal, 99 Wn. App. at 633. Up to this point of McNeal, its holding is not presently in dispute.

Having decided that McNeal's liberty interest was the same as that of a parolee or probationer, the court determined that *unlike* a parolee or probationer, McNeal was *not* entitled to have the Department consider whether he was entitled to appointed counsel at the revocation hearing. The court understood Scarpelli as requiring a case-by-case determination of the right to counsel at a revocation hearing *only* in a probation or parole system designed to be rehabilitative. Characterizing community custody in Washington as punitive in nature rather than rehabilitative, the court rejected McNeal's argument that the Department was bound to apply Scarpelli in violation hearings:

> We disagree because, at this juncture, the distinction between the goals of parole and community custody we discussed earlier in this opinion becomes critical.
> The focus of the Scarpelli opinion is on the rehabilitative goal of probation and parole. Parole officers, who are normally concerned with successfully rehabilitating the parolee within the community, sometimes nevertheless recommend that parole be revoked.[47] When this happens, the parole officer is no longer the parolee's advocate and advisor. He or she becomes an adversary during the revocation process, and counsel is needed to insure that the rehabilitation effort is not interrupted unnecessarily.[48] Because the focus of the hearing is often on the extent of and future potential for rehabilitation, counsel may be necessary to advocate for the parolee. But as we noted above, our Supreme Court had held that community custody, despite some rehabilitative adjuncts, is primarily punitive in nature.[49] Absent the rehabilitative goal of probation and parole, the rationale of Scarpelli does not apply. And the burden on the State of providing counsel, including delay in and formalization of the hearings, the added expense and the administrative burden, override the marginal value counsel would provide at these in-custody hearings.[50] The decision to revoke community custody is based primarily on factual determinations about whether the individual violated the conditions of community custody. The success or failure of the rehabilitative process is not even a factor.

---

[47] Scarpelli, 411 U.S. at 785.
[48] Id. at 785-86.

15

[49] [State v. Ross, 129 Wn.2d 279, 286, 916 P.2d 405 (1996)].

[50] Morrissey, 408 U.S. at 481; [Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)].

McNeal, 99 Wn. App. at 634-35. Thus, the court concluded that the Morrissey requirements are sufficient to protect against a wrongful revocation of community custody and counsel is never required.

The Department's procedural regulations for violation hearings are consistent with McNeal. See WAC 137-104-060(7): "There is no right to an attorney or counsel."

McNeal was not this court's last word on the meaning of Scarpelli. The applicability of Scarpelli arose again in 2003 in Ziegenfuss. The appeal was from a sentence imposing a legal financial obligation as a condition of sentence. Appellant Ziegenfuss contended the trial court should have waived the obligation because of her indigency. She argued that the Department's procedures for adjudicating violations of sentence conditions were constitutionally inadequate to protect her from being punished for a nonwillful failure to pay the legal financial obligation. She particularly objected that the regulations violate due process "because they expressly prohibit representation by counsel in the hearings," citing WAC 137-104-060(7). Ziegenfuss, 118 Wn. App. at 116. The court concluded the Department's hearing procedures were consistent with Morrissey. Ziegenfuss, 118 Wn. App. at 113-14. As to the right to counsel, the court expressly refused to follow McNeal and held that the right to counsel was to be determined on a case-by-case basis under Scarpelli:

16

> The State contends that under <u>McNeal</u>, due process does not require representation by counsel in community custody violation hearings. The right to counsel, however, is determined on a case-by-case basis.

<u>Ziegenfuss</u>, 118 Wn. App. at 116 (footnote omitted). The court also distinguished

<u>McNeal</u> factually on the ground that community custody had been given a

broader definition in the intervening years:

> We note that Ziegenfuss' case differs factually from <u>McNeal</u> in that <u>McNeal</u> was decided when community custody referred only to DOC supervision in lieu of earned early release. <u>McNeal</u> simply interpreted the United States Supreme Court's decision in <u>Scarpelli</u>, which held that the question of whether due process requires counsel at parole revocation hearings must be answered on a case-by-case basis. <u>Scarpelli</u>, 411 U.S. at 790.

<u>Ziegenfuss</u>, 118 Wn. App. at 116 n.24.

<u>McNeal</u> and <u>Ziegenfuss</u> are in conflict with regard to whether a case-by-

case evaluation of the need for counsel is necessary. Division Two has

recognized the conflict. <u>In re Pers. Restraint of Price</u>, 157 Wn. App. 889, 906,

240 P.3d 188 (2010). In <u>Price</u>, an offender challenged the revocation of his drug

offender sentencing alternative sentence on the ground that the Department's

denial of appointed counsel was a procedural due process violation. The court

noted that <u>McNeal</u> "appears to conflict with" the observation in <u>Ziegenfuss</u> that

the right to counsel at such hearings should be determined on a case-by-case

basis, "as <u>Scarpelli</u> counsels." <u>Price</u>, 157 Wn. App. at 906. The court quoted

<u>Scarpelli</u>'s suggested criteria for judging when counsel should be provided.

Under <u>Scarpelli</u>, the offender should presumptively be provided with counsel in

certain circumstances, for example where the argument against revocation is

complex or difficult to present:

17

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

Scarpelli, 411 U.S. at 790-91, quoted in Price, 157 Wn. App. at 905.

In Price, the court found it unnecessary to resolve the conflict because the offender would not have been entitled to counsel even if the Department had followed Scarpelli. "This was not a complex case that involved evidentiary or legal subtleties. Rather, the case turned on straightforward factual determinations about the alleged violations and the credibility of various witnesses." Price, 157 Wn. App. at 906.

We cannot avoid resolving the conflict in this case. If McNeal is correct in its interpretation of Scarpelli, the Department does not have a clear duty to evaluate the need for appointed counsel in a community custody revocation hearing on a case-by-case basis under Scarpelli, and the trial court erred in issuing the writ of mandamus.

The Department attacks the Ziegenfuss observation about Scarpelli as dicta, and arguably it is. The Department also argues that even if it is not dicta, Ziegenfuss incorrectly found McNeal to be factually distinguishable. As the

18

Department points out, the statutes at issue in <u>McNeal</u> are not distinct from current statutes in the way the <u>Ziegenfuss</u> court believed they were. At the time <u>McNeal</u> was decided in 2000, community custody could be a part of a drug offender alternative sentence. But the Department's critiques of <u>Ziegenfuss</u> miss the main point. The vital question is which opinion correctly interpreted <u>Scarpelli</u>— <u>McNeal</u> or <u>Ziegenfuss</u>?

The rationale of <u>Scarpelli</u> is not that an attorney becomes valuable only in a hearing that focuses on the offender's potential for rehabilitation. Under <u>Scarpelli</u>, if a convicted offender faces an allegation that might result in a return to prison after he has been released to the community, the hearing authority must evaluate a request for counsel on a case-by-case basis. The case-by-case evaluation requirement is imposed because there are occasions when, by virtue of the offender's individual circumstances, he would be deprived of procedural due process if counsel were not appointed to present his case. <u>See</u> <u>Scarpelli</u>, 411 U.S. at 783-85 (discussing rehabilitation), 786-90 (discussing case-by-case evaluation). The majority decision in <u>McNeal</u> interprets <u>Scarpelli</u> incorrectly for all the reasons articulated by Judge Webster, who dissented in <u>McNeal</u> as follows:

> It was for this reason, the risk that in some cases the *Morrissey* protections would be ineffective in the absence of counsel, that the Court determined that due process required counsel in those cases.
> I submit that this same risk is present in community custody revocations. The "unskilled or uneducated" individual in community custody may no doubt have difficulty in presenting his version of disputed facts where it requires the examination or cross-examination of witnesses or presentation of documentary evidence.

Furthermore, as McNeal argues, the fact that community custody is primarily punitive rather than rehabilitative supports a finding that due process requires counsel in certain cases. The risk of an erroneous deprivation of a liberty interest is *less* likely in a system operating with the goals of the parolee's rehabilitation and reintegration into society than it is in a system operating with punitive goals. Thus, the need for counsel in certain cases is heightened rather than diminished by the punitive nature of community custody.

McNeal, 99 Wn. App. at 637-38 (Webster, J., dissenting in part).

We agree with Judge Webster's dissent. Scarpelli's requirement for a case-by-case determination of the need for counsel does not depend on the degree to which the supervising system focuses on rehabilitation rather than punishment.

And to the extent that Scarpelli makes the punitive aspect of a community custody system relevant to the case-by-case determination, we disagree with McNeal's premise that community custody exists for primarily punitive purposes. Grisby was serving the community custody portion of a drug offender alternative sentence. Manifestly, the legislature intended this sentencing alternative sentence to be rehabilitative, as it provides for substance abuse assessment and treatment during community custody. RCW 9.94A.662.[4]

In short, we disagree with McNeal's categorical determination that due process never requires the appointment of counsel. Properly interpreted, Scarpelli requires the Department to make a case-by-case determination.

---

[4] The statement in McNeal that community custody is punitive rather than rehabilitative was plucked out of context from Ross, 129 Wn.2d at 286. In Ross, the court decided that a mandatory term of community placement constitutes a direct consequence of a guilty plea because it is a form of restriction added on to a prison term and failure to so inform a defendant renders the plea invalid.

DISAGREEMENT WITH OUR PREVIOUS OPINION

This brings us to a secondary issue: even though we disagree with McNeal's interpretation of Scarpelli, must we nevertheless follow McNeal as a matter of stare decisis? The Department contends that this court's previous holding in McNeal is "controlling law" and "binding precedent" that this court must follow because no "controlling precedent" has changed its holding and because Ziegenfuss did not overrule McNeal. At oral argument before this court, the Department argued that as a matter of stare decisis, this court could not "overrule" its own decision in McNeal in the absence of an intervening ruling by either the Washington Supreme Court or the United States Supreme Court.

The various panels of the Court of Appeals strive not to be in conflict with each other because, like all courts, we respect the doctrine of stare decisis. Our Supreme Court eloquently discussed stare decisis in In re Rights to Waters of Stranger Creek, 77 Wn.2d 649, 653, 466 P.2d 508 (1970). In that case, one party asked the court to reexamine a question it had decided in previous cases. The other party asserted that the court was precluded from entertaining an argument to change the law, especially because the status quo had been established in reliance upon the previous cases. The court responded that precedents are not unalterable, and it is appropriate to hear an argument for a change in the law upon a clear showing that the established rule is incorrect and harmful:

> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court-made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious

21

action or the whims of current holders of judicial office. But we also recognize that stability should not be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned. Thus understood, the doctrine of stare decisis does not preclude consideration of the department's arguments.

Stranger Creek, 77 Wn.2d at 653.

Later Supreme Court cases have incorporated the Stranger Creek analysis into a formal requirement that litigants who ask the court to overrule a prior decision must show that the prior decision is both incorrect and harmful. See, e.g., Key Design Inc. v. Moser, 138 Wn.2d 875, 882, 983 P.2d 653, 993 P.2d 900 (1999) ("We will not overturn an established rule unless the party challenging it makes a clear showing that the rule is incorrect and harmful.")

Only a few Court of Appeals opinions have expressly applied the same test or indicated that parties must brief it.[5] The Department cites one such case,

---

[5]These cases are Keck v. Collins, 181 Wn. App. 67, 91, 325 P.3d 306 (2014), affirmed but criticized by No. 90357-3, 2015 WL 5612829 (Wash. Sept. 24, 2015); Fergen v. Sestero, 174 Wn. App. 393, 398, 298 P.3d 782 (2013) (declining appellant's invitation to find previous rule is incorrect and harmful), affirmed, 182 Wn.2d 794, 346 P.3d 708 (2015); Fed. Way Sch. Dist. 210 v. Vinson, 154 Wn. App. 220, 235, 225 P.3d 379 (2010) (Dwyer, J., dissenting), reversed, 172 Wn.2d 756, 261 P.3d 145 (2011); State v. Stalker, 152 Wn. App. 805, 811-12, 219 P.3d 722 (2009), review denied, 168 Wn.2d 1043 (2010); State v. Yarbrough, 151 Wn. App. 66, 84 n.5, 210 P.3d 1029 (2009); Little v. King, 147 Wn. App. 883, 889, 198 P.3d 525 (2008); State v. Zimmerman, 130 Wn. App. 170, 175-76 n.4, 121 P.3d 1216 (2005), affirmed on remand, 135 Wn. App. 970, 146 P.3d 1224 (2006), review denied, 161 Wn.2d 1012 (2007); King v. W. United Assur. Co., 100 Wn. App. 556, 561, 997 P.2d 1007, review denied, 141 Wn.2d 1027 (2000); State v. Coss, 87 Wn. App. 891, 904, 943 P.2d 1126 (1997) (Brown, J., dissenting), review denied, 134 Wn.2d 1028 (1998); Magney v. Lincoln Mut. Sav. Bank, 34 Wn. App. 45, 61 n.1, 659 P.2d 537 (McInturff, J., dissenting), review denied, 99 Wn.2d 1023 (1983).

Little v. King, as authority for the argument that stare decisis precludes us from "overruling" McNeal. Little v. King, 147 Wn. App. 883, 198 P.3d 525 (2008). Little, however, simply articulates the uncontroversial proposition that this court, like the Supreme Court, is "exceedingly reluctant to disagree with recent opinions." Little, 147 Wn. App. at 889. The Little court decided to "depart from" a previous Court of Appeals decision in view of the reasoning of an intervening Supreme Court decision that indicated the previous Court of Appeals decision was incorrect. Little, 147 Wn. App. at 889.

Technically speaking, one panel of the Court of Appeals does not "overrule" a decision of a previous panel.[6] The court rules implicitly recognize that only the Supreme Court can overrule a Court of Appeals decision.[7] Where "the decision of the Court of Appeals is in conflict with another decision of the

---

[6] Little has been cited to support the assertion that this court uses the same standard for "overruling" precedent as does the Supreme Court. State v. Stalker, 152 Wn. App. at 811-12. In Stalker, the court determined that "the strict standard for overruling" a prior case had not been met. Stalker, 152 Wn. App. at 814. Of course it is not inappropriate for this court to consider whether a previous opinion is incorrect and harmful in the course of deciding whether or not to follow it. But as discussed above, this court does not overrule prior decisions. Consequently, it is not obligatory for this court to use, or for parties to brief in this court, a standard developed by the highest state court for its own use in determining whether to overrule one of its own decisions. Stalker's contrary dicta should not be taken as a new requirement to be met in briefs and argument before the Court of Appeals.

[7] The only contrary statement by our Supreme Court is in a footnote in International Association of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 37 n.9, 42 P.3d 1265 (2002), where the court opined that the Court of Appeals "can overrule a previous decision" if it is demonstrably incorrect or harmful. However, for this statement the court cited King, a Court of Appeals decision. The King court did not state that it was overruling the previous decision—rather, agreeing with a party's argument that the previous decision was "wrongly decided," the court stated "we disagree with" the previous decision and "decline to follow" it. King, 100 Wn. App. at 560-61.

Court of Appeals," a basis exists for a petition for discretionary review by the Supreme Court. RAP 13.4(b)(2). If the most recent Court of Appeals opinion overruled conflicting Court of Appeals decisions and replaced them as binding precedent and controlling authority, no decisions would be in conflict and RAP 13.4(b)(2) would no longer serve any purpose as a basis for discretionary review. The Supreme Court settles the law when Court of Appeals decisions are in conflict.[8] It follows that two inconsistent opinions of the Court of Appeals may exist at the same time. See Mark DeForrest, In the Groove or in a Rut? Resolving Conflicts between the Divisions of the Washington State Court of Appeals at the Trial Court Level, 48 GONZ. L. REV. 455 (2012/13). We have found no Court of Appeals opinion that actually states it is overruling an earlier Court of Appeals opinion. When one of our panels concludes that a previous Court of Appeals decision used a faulty legal analysis or has been undermined by some new development in the law, the opinion will usually state simply that the panel "disagrees with," "departs from," or "declines to follow" the other opinion.[9]

---

[8] See, e.g., State v. Nunez, 174 Wn.2d 707, 285 P.3d 21 (2012) (resolving a disagreement between Divisions One and Three); State v. Borboa, 157 Wn.2d 108, 135 P.3d 469 (2006) (resolving a disagreement between Divisions One and Two); McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006) (resolving a disagreement between Divisions Two and Three).

[9] See, e.g., State v. Mohamed, 175 Wn. App. 45, 55, 301 P.3d 504 ("We disagree . . . because, in our view, the statement is legally incorrect dicta that we decline to follow"), review denied, 178 Wn.2d 1019 (2013); State v. Grant, 172 Wn. App. 496, 503, 301 P.3d 459 (2012) ("We respectfully disagree with the Korum court's analysis"), review denied, 177 Wn.2d 1021 (2013); City of Kent v. Mann, 161 Wn. App. 126, 128, 253 P.3d 409 (2011); Thompson v. Hanson, 142 Wn. App. 53, 63, 174 P.3d 120 (2007) ("We disagree with Division Three's conclusion . . . ."), affirmed, 168 Wn.2d 738, 239 P.3d 537 (2009); State v. Giles,

Mr. DeForrest's thoughtful and persuasive article points out the problems created by "a pure 'first to the post'" rule, "wherein the earliest decision by one of the divisions functions to establish binding precedent on the other divisions, come rain or shine." DeForrest, 48 GONZ. L. REV. at 504. As he points out, if the first panel to decide an issue gets it wrong, the error would be perpetuated unless and until the Supreme Court took review. He regards the existence of splits within the Court of Appeals as serving the positive function of alerting the high court to unsettled areas of the law that are in need of review. DeForrest, 48 GONZ. L. REV. at 505. His article discusses the options available to superior courts when conflicting Court of Appeals opinions exist. In his view, a superior court need not consider itself bound by the opinion from the division in which the superior court sits, but should instead use its judgment to attempt to determine which opinion the Supreme Court would agree with. DeForrest, 48 GONZ. L. REV. at 457, 506-11.

It is relatively uncommon, but not unknown, for panels within a single division to be in conflict with each other.[10] Here, we confront a conflict within

---

132 Wn. App. 738, 741, 132 P.3d 1151 (2006) ("We respectfully disagree with our learned colleagues . . . and diverge from their holding here"), review denied, 160 Wn.2d 1006 (2007); Gontmakher v. City of Bellevue, 120 Wn. App. 365, 374, 85 P.3d 926 (2004) ("We decline to follow"); King, 100 Wn. App. at 561; State v. Grantham, 84 Wn. App. 854, 860, 932 P.2d 657 (1997) ("We do not find the analysis . . . persuasive here.")

[10] See, e.g., State v. Hochhalter, 131 Wn. App. 506, 128 P.3d 104 (2006), disagreed with by Giles, 132 Wn. App. 738; Trachtenberg v. Dep't of Corr., 122 Wn. App. 491, 93 P.3d 217 (2004), disagreed with by Arnold v. City of Seattle, 186 Wn. App. 653, 345 P.3d 1285 (2015), petition for review granted, No. 91742-6 (Wash. Sept. 30, 2015); Castronuevo v. Gen. Acceptance Corp., 79 Wn. App. 747, 905 P.2d 387 (1995), disagreed with by King, 100 Wn. App. at 561; State v. Begin, 59 Wn. App. 755, 759-60, 801 P.2d 269 (1990), review denied, 116

Division One: Ziegenfuss disagreed with McNeal about how to read Scarpelli.

Scarpelli is an opinion by the United States Supreme Court describing a duty owed under the due process clause of the United States Constitution. Because we conclude Scarpelli imposes upon the Department a clear duty to consider the right to counsel on a case-by-case basis in community custody violation hearings, we must also conclude that Ziegenfuss was right on that issue and McNeal was wrong. Though no intervening statute or higher court decision has cast doubt upon McNeal, the doctrine of stare decisis does not preclude us from stating a holding that is inconsistent with McNeal.

We recognize that the Department has relied on McNeal as authority to structure its hearings without giving case-by-case consideration of an offender's request for counsel and that complying with our decision may be burdensome. These considerations cannot interfere with our duty to enforce a constitutional right. Ziegenfuss and Price already signaled to the Department that McNeal should not be considered unshakeable in its reading of Scarpelli. What has happened is that the superior court, faced with two conflicting Court of Appeals decisions, made a judgment that our Supreme Court is more likely to agree with Ziegenfuss than with McNeal. Scarpelli requires a case-by-case determination.

MANDAMUS—NO OTHER ADEQUATE REMEDY

The Department contends that even if there is a clear duty under Scarpelli to make a case-by-case determination, mandamus was inappropriate in Grisby's

Wn.2d 1019 (1991), disagreed with by State v. King, 75 Wn. App. 899, 913, 878 P.2d 466 (1994), review denied, 125 Wn.2d 1021 (1995), disagreement resolved, State v. Hardy, 133 Wn.2d 701, 708-09, 946 P.2d 1175 (1997).

case because he had a plain, speedy, and adequate remedy in the ordinary course of law through the filing of a personal restraint petition. What constitutes a plain, speedy, and adequate remedy depends on the facts of the case and rests within the sound discretion of the court in which the writ is sought. City of Olympia v. Thurston County Bd. of Comm'rs, 131 Wn. App. 85, 95, 125 P.3d 997 (2005), review denied, 158 Wn.2d 1003 (2006). The trial court did not abuse its discretion in finding that Grisby had no plain, speedy, and adequate remedy at law. Relief sought in a personal restraint petition is available only where the offender is already under unlawful restraint from the challenged decision. RAP 16.4(c). It is not available to challenge a future decision that may result in confinement. In contrast, mandamus allowed Grisby to get in front of a judge before he was confined.

The Department also argues that the trial court exceeded the proper scope of mandamus relief by extending its ruling into the future for offenders similarly situated to Grisby. Writs are not directed at a general course of conduct. Walker v. Munro, 124 Wn.2d 402, 407, 879 P.2d 920 (1994). The court ordinarily will not issue a writ unless the duty exists at the time the writ is sought. Walker, 124 Wn.2d at 409. It "'must appear that there has been an actual default in the performance of a clear legal duty then due at the hands of the party against whom relief is sought. Until the time fixed for the performance of the duty has passed, there can be no default of duty.'" Walker, 124 Wn.2d at 409, quoting State ex rel. Hamilton v. Cohn, 1 Wn.2d 54, 58-59, 95 P.2d 38 (1939).

This rule, however, does not apply when the court faces a recurring situation where the same specific duty repeatedly arises. See Clark County Sheriff v. Department of Social & Health Services, 95 Wn.2d 445, 626 P.2d 6 (1981). In Clark County Sheriff, the sheriff filed a petition for writ of mandamus to compel the Department to accept all convicted felons he offered for transfer to the reception center in Shelton, Washington. At the time, a statute stated that the Department "'shall receive'" all men convicted of a felony. Clark County Sheriff, 95 Wn.2d at 447. The Department maintained that it had discretionary authority to delay acceptance of felons in light of overcrowding at its facilities. The court rejected the Department's argument and ordered it to receive all convicted male felons, other than those specifically exempted by other statutes, at the corrections center when offered for admission. Clark County Sheriff, 95 Wn.2d at 448. The court also rejected the Department's argument that the writ improperly compels a general course of conduct. "Here, while it is true that the order is broad enough to command future acts of the Department, the acts are precisely defined. . . . The acts required will not vary with changing circumstances. The writ was appropriate and the court did not err in granting it." Clark County Sheriff, 95 Wn.2d at 450 (footnote omitted).

This case is like Clark County Sheriff. The Department has a clear duty to determine on a case-by-case basis whether offenders facing revocation of community custody are entitled to appointed counsel under Scarpelli. Because the Department has refused to recognize this duty, the trial court properly ordered the Department to make the case-by-case determination as

28

contemplated by Ziegenfuss—not just in this case, but in similar cases when a request is made by the person subject to a hearing.

## RETAINED COUNSEL

If the Department had considered Grisby's request for appointed counsel under Scarpelli and denied it, part two of the superior court's order required the Department to permit Boruchowitz to represent Grisby as retained counsel. Part three of the order categorically prohibited the Department from conducting a violation hearing for Grisby without permitting counsel to represent him.

Grisby has cited no authority establishing a clear duty to permit representation by retained counsel in revocation hearings. Whether there is a right to retained counsel was expressly reserved by Scarpelli, 411 U.S. at 783 n.6. We have found one case where that issue was decided in the affirmative. State v. Young, 122 Idaho 278, 282-83, 833 P.2d 911 (1992). Because Young was not cited or briefed by the parties, we choose not to rely on it as establishing a clear duty. The only clear duty Grisby has established is the case-by-case determination required by Scarpelli. On this record, we conclude parts two and three of the order must be reversed.

Affirmed in part, reversed in part.

Becker, J.

WE CONCUR:

Trickey, J.

Jau, J.

29