*851 Pennell, J.
¶23 (concurring) — I write separately to provide my thoughts on how stare decisis should function within our appellate court. This is a matter that deserves clarity, especially as our court nears its 50th anniversary. I come to the task of analyzing stare decisis favorably disposed to its application. Stare decisis is what ensures the law exists on its own, separate from the various personalities that come and go from the bench. Adhering to stare decisis does not necessitate avoiding disagreement with past decisions. It simply requires respect. Invoking stare decisis means that prior to deviating from a prior decision, we will concern ourselves not only with analytical integrity, but also with the practical implications of disrupting existing law. Doing so permits litigants and attorneys to have confidence in how to administer their affairs, advise clients, and present cases to our court.
¶24 As a foundational matter, there can be no doubt that stare decisis has at least some role to play in our appellate courts. Our Supreme Court has stated as much. In 2002, the court recognized application of the doctrine, noting that “ [t] he Court of Appeals can overrule a previous decision if it is ‘demonstrably incorrect or harmful.’ ” Int’l Ass’n of Fire Fighters, Local 46 v. City of Everett, 146 Wn.2d 29, 37 n.9, 42 P.3d 1265 (2002) (internal quotation marks omitted) (quoting King v. W. United Assur. Co., 100 Wn. App. 556, 561, 997 P.2d 1007 (2000)). Fire Fighters involved a conflict within Division One’s case law. Given this procedural posture, the Supreme Court did not address whether the stare decisis test applied throughout the Court of Appeals, or only within a given division.
¶25 While the Supreme Court did not explicitly state that stare decisis applies across the different divisions of our court, I see no substantive basis for limiting its application. Our state Court of Appeals is a unitary court. Wash. Const, art. IV, § 30(1) (creating “a court of appeals”). Although we are divided into three geographic regions, we are one court, and a decision by any one panel in the court is *852 binding on lower courts throughout the state, regardless of location. See, e.g., Marley v. Dep’t of Labor & Indus., 72 Wn. App. 326, 330, 864 P.2d 960 (1993), aff’d, 125 Wn.2d 533, 886 P.2d 189 (1994).
¶26 It has been suggested that RAP 13.4(b)(2) provides implicit permission for the appellate divisions to disagree with one another without the constraints of stare decisis. Kelly Kunsch, Stare Decisis: Everything You Never Realized You Need to Know, 52 Wash. St. Bar News, no. 10, Oct. 1998, at 31, 34.I am unpersuaded. RAP 13.4(b)(2) states that the Washington Supreme Court may accept a petition for review if an appellate decision “is in conflict with a published decision of the Court of Appeals.” RAP 13.4 does not distinguish between inter- and intradivision conflicts. Furthermore, the fact that the rule recognizes conflicts may occur does not mean they should. Indeed, even in the federal system, where panels are bound by prior decisions within the same circuit, conflicts occur. See, e.g., United States v. Am.-Foreign S.S. Corp., 363 U.S. 685, 689-90, 80 S. Ct. 1336, 4 L. Ed. 2d 1491 (1960); Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 75 n.5 (1st Cir. 2005); Knife Rights, Inc. v. Vance, 802 F.3d 377, 387-88 (2d Cir. 2015); United States v. Tann, 577 F.3d 533, 541-42 (3d Cir. 2009); McMellon v. United States, 387 F.3d 329, 332-33 (4th Cir. 2004); Johnson v. Moral, 843 F.2d 846, 847-48 (5th Cir. 1988); Meeks v. Ill. Cent. Gulf R.R., 738 F.2d 748, 751 (6th Cir. 1984); Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011); Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1478-79 (9th Cir. 1987); United States v. VanMeter, 278 F.3d 1156, 1167 (10th Cir. 2002) (Lucero, J., concurring); Smith v. GTE Corp., 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). It is for this reason that the federal Rules of Appellate Procedure allow for en banc review when panel decisions within a circuit are in conflict. Fed. R. App. P. 35(a)(1). However, the fact that Fed. R. App. P. 35 permits en banc courts to address intracircuit conflicts does not mean panels within a circuit are free to disagree with each other’s *853 decisions. So too RAP 13.4 cannot fairly be read to imply that stare decisis does not apply to decisions within the Court of Appeals, regardless of division.
¶27 Apart from the question of whether stare decisis applies across divisions, confusion has arisen as to the applicable formulation. In Fire Fighters, the Supreme Court stated the test involved an analysis of whether a past decision was “ ‘incorrect or harmful.’ ” 146 Wn.2d at 37 n.9 (emphasis added) (internal quotation marks omitted) (quoting King, 100 Wn. App. at 561). However, the court’s choice of the word “or” is of questionable significance. The Supreme Court has traditionally referred to the two prongs of stare decisis in the conjunctive, requiring analysis of whether a past decision was incorrect and harmful. State v. Stalker, 152 Wn. App. 805, 811 n.1, 219 P.3d 722 (2009). But in the mid-1990s, the court changed course and occasionally began articulating the standard in the disjunctive. Id. No explanation was given for this shift, and the conjunctive formulation was still utilized. Id. In recent decisions, the Supreme Court resolved this inconsistency, definitively holding that the stare decisis test is conjunctive, not disjunctive. Deggs v. Asbestos Corp., 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016); State v. Barber, 170 Wn.2d 854, 864, 248 P.3d 494 (2011). Unfortunately, the court did not address whether this formulation also applied to the stare decisis test utilized in the Court of Appeals.
¶28 Division One has attempted to clear up the conjunctive versus disjunctive question as it applies to the Court of Appeals. See Stalker, 152 Wn. App. at 811-12. According to the court in Stalker, the appellate courts apply the same formulation of stare decisis as does the Supreme Court. Id. Accordingly, a prior appellate decision should not be rejected unless it is “both incorrect and harmful.” Id. at 812.
¶29 I generally agree with this approach. Although we lack the ability to overrule a prior appellate decision, Grisby v. Herzog, 190 Wn. App. 786, 808-09, 362 P.3d 763 (2015), we should follow the Supreme Court’s lead in recognizing the *854 importance of both the “incorrect” and “harmful” prongs of stare decisis.
¶30 There can be little debate over the importance of finding a prior decision incorrect prior to changing course. It is inconceivable that an appellate court would deviate from a prior decision without first concluding that decision was incorrect. No amount of perceived harm can justify promulgating a newly minted incorrect legal rule. If a given rule is harmful but nevertheless correct, the proper remedy lies with the legislature, not the judiciary.
¶31 The harm component of stare decisis is more controversial. Yet it is critical. Without an assessment of harm, the doctrine of stare decisis has little significance. It is the question of harm that makes application of stare decisis a pragmatic exercise, focused on enhancing stability in the law, rather than simply analytic purity. See, e.g., Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000); Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 854-61, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). The need to assess harm is what gives weight to our precedents and ensures they will not be easily overturned.
¶32 Although fidelity to stare decisis means always delving into the issue of harm, the manner in which harm should be assessed is different in our court than it is in the Supreme Court. There is value to our appellate panels engaging in rigorous debate over the interpretation of our state’s laws prior to the Supreme Court issuing a final decision. Mark DeForrest, In the Groove or in a Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level, 48 Gonz. L. Rev. 455, 505 (2012/13). When it comes to issues of legal process such as what level of scrutiny to apply to a constitutional claim, State v. Danis, 64 Wn. App. 814, 819, 826 P.2d 1096 (1992), the scope of the prior conviction exception to the Sixth Amendment’s jury trial right,[5] State v. Hoch- *855 halter, 131 Wn. App. 506, 520-22, 128 P.3d 104 (2006), and eligibility for attorney fee awards, King, 100 Wn. App. at 560-61, there is little public disruption or harm caused by discordant decisions from our court. See Payne v. Tennessee, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991). Such inconsistencies may be frustrating to a superior court judge, tasked with deciding which binding opinion to follow. DeForrest, supra, at 509. Nevertheless, they are not insurmountable. Id. There is great value to getting the law correct, especially when doing so vindicates individual rights. See, e.g., Grisby, 190 Wn. App. at 811. Often the goal of righting past wrongs justifies deviating from past decisions.
¶33 But the harm caused by changing course is sometimes salient. When it comes to rules applicable outside of court proceedings, governing how ordinary people and businesses conduct their day-to-day affairs, there are substantial costs to deviating from prior decisions. Published case law in areas such as real property, contract, and criminal law is relied on by the public and impacts liberty and property interests. See, e.g., Payne, 501 U.S. at 828; House v. Erwin, 83 Wn.2d 898, 909, 524 P.2d 911 (1974). Overturning such cases can cause substantial harm to individuals who are simply trying to follow the law. In such circumstances, it may be better to be consistent than right.
¶34 As set forth in the majority decision, the potential inequities presented by this case highlight the importance of applying the harm component of stare decisis across the different divisions of our court. Our Supreme Court may ultimately agree with the dissent and find Taylor and Wheeler wrongly decided. Should it do so, it will be empowered to overrule those decisions and provide consistent relief. But we cannot. I therefore join the decision to maintain Taylor and Wheeler and vote to reverse Mr. Arnold’s conviction.

 U.S. Const. amend. VI.