IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 34018-0-III |
| | ) | |
| EDDIE D. ARNOLD, | ) | |
| | ) | PUBLISHED OPINION |
| Petitioner. | ) | |
| | ) | |

PENNELL, J. — Eddie Arnold was convicted of failing to register as a sex offender.

His conviction was based on a statutory rape statute that was subsequently repealed. Prior

decisions of our court, issued by Divisions One and Two, have overturned failure to

register convictions in analogous circumstances. The doctrine of stare decisis persuades

us to follow suit. We therefore grant Mr. Arnold's personal restraint petition (PRP) and

vacate his conviction.

## BACKGROUND

The facts in this case are materially similar to those considered by Division One of

our court in *State v. Taylor*, 162 Wn. App. 791, 259 P.3d 289 (2011), and Division Two

in *In re Personal Restraint of Wheeler*, 188 Wn. App. 613, 354 P.3d 950 (2015). On June

27, 1988, Mr. Arnold pleaded guilty to second degree statutory rape in violation of former

RCW 9A.44.080(1) (1979). Several days after the guilty plea, the legislature repealed

provisions defining the three degrees of statutory rape in former RCW 9A.44.070, .080, and .090, and replaced them with three degrees of the crime of rape of a child in RCW 9A.44.073, .076, and .079. *See* SUBSTITUTE H.B. 1333, ch. 145, §§ 2-4, 24, 26, 50th Leg., Reg. Sess. (Wash. 1988).[1]

Mr. Arnold was released from his prison sentence in August 1990. That same year, the legislature enacted RCW 9A.44.130, which required sex offenders to register. SECOND SUBSTITUTE S.B. 6259, ch. 3, § 402, 51st Leg., Reg. Sess. (Wash. 1990). Throughout the 2000s, Mr. Arnold was convicted five times for failure to register as a sex offender.[2]

In 2011, the Court of Appeals decided *Taylor*. That case reversed a conviction for failure to register as a sex offender, reasoning that the defendant's prior conviction for third degree statutory rape was no longer listed in the provision of the Sentencing Reform Act of 1981, chapter 9.94A RCW (SRA), that defined "sex offense." 162 Wn. App. at 801.

In October 2013, the State charged Mr. Arnold with failure to register. The State alleged Mr. Arnold's 1988 statutory rape conviction required him to register and Mr.

---

[1] The legislature passed and the governor approved the bill in March 1988, but it did not take effect until July 1, 1988.

[2] Mr. Arnold has not sought relief from these prior convictions here.

Arnold failed to comply with RCW 9A.44.130's registration requirements between May and October 2013. Several weeks later, the State also charged Mr. Arnold with first degree trafficking in stolen property.

In March 2015, the State and Mr. Arnold negotiated a global plea agreement, under which Mr. Arnold pleaded guilty to failure to register and an amended second degree trafficking in stolen property charge. The State and Mr. Arnold jointly recommended 51 months of incarceration for both charges and agreed Mr. Arnold would serve both sentences concurrently. The trial court accepted the plea agreement and imposed the requested sentence on June 4.

Two weeks after the sentencing hearing, the Spokane County Sheriff's Office sent Mr. Arnold a letter informing him that he was relieved of his duty to register as a sex offender pursuant to *Taylor*. On August 6, 2015, Mr. Arnold moved to withdraw his guilty plea under CrR 7.8. Mr. Arnold asserted that he was not required to register as a sex offender under *Taylor* and he was unaware of *Taylor* when he pleaded guilty. The trial court transferred Mr. Arnold's motion to this court for consideration as a PRP.

## ANALYSIS

Divisions One and Two of our court have ruled invalid convictions that are materially indistinguishable from Mr. Arnold's. *Taylor*, 162 Wn. App. at 801; *Wheeler*,

3

188 Wn. App. at 621. In brief, these decisions hold that because the sex offender registration statute specifically requires registration by anyone convicted of a felony that "is" a violation of chapter 9A.44 RCW, the registration obligation does not apply to convictions under Washington's repealed statutory rape statute.

The State largely acknowledges that, if we were to follow *Taylor* and *Wheeler*, Mr. Arnold's failure to register conviction cannot stand.[3] Nevertheless, the State urges us not to follow the lead of our court's other divisions because they rest on an incorrect interpretation of the relevant statutes. As pointed out by our dissenting colleague, the State's argument has much force. Nevertheless, we are persuaded to follow the lead of our court's prior decisions under the doctrine of stare decisis.

"Stare decisis" is a Latin phrase, meaning "to stand by things decided." BLACK'S LAW DICTIONARY 1626 (10th ed. 2014). The doctrine of stare decisis has two primary incantations: vertical stare decisis and horizontal stare decisis. Under vertical stare decisis, courts are required to follow decisions handed down by higher courts in the same

---

[3] The State argues Mr. Arnold was still incarcerated when the registration statute took effect and therefore *State v. Ward*, 123 Wn.2d 488, 869 P.2d 1062 (1994) controls this case. The *Ward* court held that requiring individuals to register who were incarcerated or under supervision at the time the statute took effect did not violate the constitutional prohibition against ex post facto laws. *Id.* at 511. *Ward* does not apply to this case because it does not involve an ex post facto issue. The question here is whether Mr. Arnold's 1988 conviction meets the SRA's definition of a "sex offense."

4

jurisdiction. For example, trial and appellate courts in Washington must follow decisions handed down by our Supreme Court and the United States Supreme Court. Adherence is mandatory, regardless of the merits of the higher court's decision. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). Horizontal stare decisis is different and more complex. Under this doctrine a court, such as this one, is not *required* to follow its own prior decisions. Yet it is often well advised to do so. Adherence to past decisions through the doctrine of stare decisis promotes clarity and stability in the law, thereby enabling those impacted by the courts' decisions to make personal and professional decisions that comply with legal mandates. *See In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970).

Horizontal stare decisis is fairly well defined at the level of our Supreme Court. While it is not strictly bound by prior decisions, a litigant seeking to upend a prior case faces an arduous task. Our Supreme Court does not lightly set aside a prior decision. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016). Because of the many benefits of adhering to precedent, the Supreme Court will only revisit prior decisions upon "'a clear showing that an established rule is incorrect and harmful.'" *Id.* (quoting *Stranger Creek*, 77 Wn.2d at 653). Both prongs of this analysis are required. *Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016); *State v. Barber*, 170 Wn.2d 854,

5

864, 248 P.3d 494 (2011). A prior case that is merely incorrect, but not also harmful, does not meet the criteria for reversal. *Deggs*, 186 Wn.2d at 727-28; *Barber*, 170 Wn.2d at 864.

When it comes to our state Court of Appeals, application of horizontal stare decisis has been less clear. *See* Mark DeForrest, *In the Groove or in a Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level*, 48 GONZ. L. REV. 455, 456 (2012/13); Kelly Kunsch, *Stare Decisis: Everything You Never Realized You Need to Know*, 52 WASH. ST. BAR NEWS 31 (Oct. 1998). Our courts have applied the doctrine to prior decisions issued by the same division. *See, e.g., State v. Stalker*, 152 Wn. App. 805, 811-12, 219 P.3d 722 (2009). However, no case has explicitly adopted stare decisis for decisions issued by a different division.[4]

We are not prepared to resolve the question of exactly how stare decisis applies in the current context, involving decisions issued by other divisions. Nevertheless, it is apparent that stare decisis must apply at least to some degree, otherwise we face vexing problems. Because one panel decision cannot overturn a prior contrary decision, "two

---

[4] In *State v. Yarbrough*, 151 Wn. App. 66, 84 n.5, 210 P.3d 1029 (2009), Division II invoked stare decisis to decline the appellant's invitation to "overturn" *State v. Boot*, 89 Wn. App. 780, 950 P.2d 964 (1998), and *State v. Campbell*, 78 Wn. App. 813, 901 P.2d 1050 (1995). *Campbell* was a decision from Division II, but *Boot* was decided by Division III.

6

inconsistent opinions . . . may exist at the same time," *Grisby v. Herzog*, 190 Wn. App. 786, 809, 362 P.3d 763 (2015), both with binding force over trial courts and litigants throughout the state. This creates a potential problem for the liberty interests of our state's citizens. The issuance of conflicting decisions about what an individual must do to abide by the law, each of which is equally binding, would call the very constitutionality of our system of appellate jurisprudence into question. *See Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015) ("the Government violates [the Fifth Amendment guarantee of due process] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement").

The harm caused by failing to follow *Taylor* and *Wheeler* under stare decisis is salient here. Regardless of whether *Taylor* and *Wheeler* were incorrectly decided, parting company at this point would create unjustified harm by rendering the applicable law impermissibly vague.

The State and our dissenting colleague take a different approach to harm. They claim the greatest harm lies in continued application of *Taylor* and *Wheeler* because the two decisions hamper law enforcement's efforts at community protection. This may be a valid concern. But it is not something we can redress. Even if we were to rule in the

7

State's favor, *Taylor* and *Wheeler* would still stand. Rather than eliminating harm, the issuance of a decision contrary to *Taylor* and *Wheeler* would exacerbate harms to the public in that sex offenders would still likely avoid registration but the legal rights and obligations of individuals throughout the state would also be in doubt.

The facts of this case make the practical problems of disagreeing with *Taylor* and *Wheeler* apparent. After his conviction, Mr. Arnold was sent a notice by the sheriff's department stating he no longer needed to register as a sex offender based on *Taylor*. Presumably other similarly situated individuals were also sent notices. What steps would the sheriff's department need to take if we issued a decision contrary to *Taylor*? Because we cannot overturn *Taylor*, it would not be able to advise individuals that its prior notice was incorrect. Yet the failure to advise individuals of a decision contrary to *Taylor* would frustrate the State's desire to increase sex offender registrations. Our court strives to solve problems, not create them. But departing from *Taylor* and *Wheeler* would do just that.

We decline to upend settled expectations throughout the state by rejecting *Taylor* and *Wheeler*. The harm of doing so is too great. The State's criticisms of our prior decisions are well taken. But only the Washington Supreme Court can provide the State the kind of definitive relief it seeks. That route for review remains available.

8

Because Mr. Arnold's 2015 failure to register conviction was facially invalid pursuant to *Taylor* and *Wheeler*, he is illegally restrained and therefore entitled to relief on his PRP. The fact that Mr. Arnold received a concurrent conviction and sentence for possession of stolen property does not alter this result. *In re Pers. Restraint of Powell*, 92 Wn.2d 882, 602 P.2d 711 (1979) (PRP relief available despite concurrent sentence); *see also In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 363-64, 256 P.3d 277 (2011); *Wheeler*, 188 Wn. App. at 617 (holding petitioner was under "restraint" even though he had completed his sentence for failure to register as a sex offender).

## CONCLUSION

We grant Mr. Arnold's personal restraint petition and vacate his 2015 conviction for failing to register as a sex offender.

_____
Pennell, J.

I CONCUR:

_____
Siddoway, J.

9

No. 34018-0-III

PENNELL, J. (concurring) — I write separately to provide my thoughts on how stare decisis should function within our appellate court. This is a matter that deserves clarity, especially as our court nears its 50th anniversary. I come to the task of analyzing stare decisis favorably disposed to its application. Stare decisis is what ensures the law exists on its own, separate from the various personalities that come and go from the bench. Adhering to stare decisis does not necessitate avoiding disagreement with past decisions. It simply requires respect. Invoking stare decisis means that, prior to deviating from a prior decision, we will concern ourselves not only with analytical integrity, but also with the practical implications of disrupting existing law. Doing so permits litigants and attorneys to have confidence in how to administer their affairs, advise clients, and present cases to our court.

As a foundational matter, there can be no doubt that stare decisis has at least some role to play in our appellate courts. Our Supreme Court has stated as much. In 2002, the court recognized application of the doctrine, noting "[t]he Court of Appeals can overrule a previous decision if it is 'demonstrably incorrect or harmful.'" *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 37 n.9, 42 P.3d 1265 (2002) (internal quotation marks omitted) (quoting *King v. Western United Assurance Co.*, 100 Wn. App. 556, 561, 997 P.2d 1007 (2000)). *Fire Fighters* involved a conflict within Division One's case law. Given this procedural posture, the Supreme Court did not address whether the stare decisis test applied throughout the Court of Appeals, or only within a given division.

No. 34018-0-III
*In re Pers. Restraint of Arnold*

While the Supreme Court did not explicitly state that stare decisis applies across the different divisions of our court, I see no substantive basis for limiting its application. Our state Court of Appeals is a unitary court. WASH. CONST. art. IV, § 30(1) (creating "a court of appeals"). Although we are divided into three geographic regions, we are one court, and a decision by any one panel in the court is binding on lower courts throughout the state, regardless of location. *See, e.g.*, *Marley v. Dep't of Labor & Indus.*, 72 Wn. App. 326, 330, 864 P.2d 960 (1993), *aff'd*, 125 Wn.2d 533, 886 P.2d 189 (1994).

It has been suggested that RAP 13.4(b)(2) provides implicit permission for the appellate divisions to disagree with one another without the constraints of stare decisis. Kelly Kunsch, *Stare Decisis: Everything You Never Realized You Need to Know*, 52 WASH. ST. BAR NEWS 31, 34 (Oct. 1998). I am unpersuaded. RAP 13.4 states that the Washington Supreme Court may accept a petition for review if an appellate decision "is in conflict with a published decision of the Court of Appeals." RAP 13.4 does not distinguish between inter- and intra-division conflicts. Furthermore, the fact that the rule recognizes conflicts may occur does not mean they should. Indeed, even in the federal system, where panels are bound by prior decisions within the same circuit, conflicts occur. *See, e.g.*, *United States v. Am.-Foreign S.S. Corp.*, 363 U.S. 685, 689-90, 80 S. Ct. 1336, 4 L. Ed. 2d 1491 (1960); *Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan*, 402 F.3d 67, 75 n.5 (1st Cir. 2005); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387-88 (2d Cir. 2015); *United States v. Tann*, 577 F.3d 533, 541-42 (3d Cir. 2009); *McMellon v.*

2

*United States*, 387 F.3d 329, 332-33 (4th Cir. 2004); *Johnson v. Moral*, 843 F.2d 846, 847-48 (5th Cir. 1988); *Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984); *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011); *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478-79 (9th Cir. 1987); *United States v. VanMeter*, 278 F.3d 1156, 1167 (10th Cir. 2002); *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001). It is for this reason that the federal rules of appellate procedure allow for en banc review when panel decisions within a circuit are in conflict. FRAP 35(a)(1). However, the fact that FRAP 35 permits en banc courts to address intra-circuit conflicts does not mean panels within a circuit are free to disagree with each others' decisions. So too RAP 13.4 cannot fairly be read to imply that stare decisis does not apply to decisions within the Court of Appeals, regardless of division.

Apart from the question of whether stare decisis applies across divisions, confusion has arisen as to the applicable formulation. In *Fire Fighters*, the Supreme Court stated the test involved an analysis of whether a past decision was "incorrect *or* harmful." 146 Wn.2d at 37 n.9 (emphasis added). However, the court's choice of the word "or" is of questionable significance. The Supreme Court has traditionally referred to the two prongs of stare decisis in the conjunctive, requiring analysis of whether a past decision was incorrect *and* harmful. *State v. Stalker*, 152 Wn. App. 805, 811 n.1, 219 P.3d 722 (2009). But in the mid-1990s, the court changed course and occasionally began articulating the standard in the disjunctive. *Id.* No explanation was given for this shift

3

and the conjunctive formulation was still utilized. *Id.* In recent decisions, the Supreme Court resolved this inconsistency, definitively holding that the stare decisis test is conjunctive, not disjunctive. *Deggs v. Asbestos Corp. Ltd.*, 186 Wn.2d 716, 727-28, 381 P.3d 32 (2016); *State v. Barber*, 170 Wn.2d 854, 864, 248 P.3d 494 (2011). Unfortunately, the court did not address whether this formulation also applied to the stare decisis test utilized in the Court of Appeals.

Division One has attempted to clear up the conjunctive versus disjunctive question, as it applies to the Court of Appeals. *See Stalker*, 152 Wn. App. at 811-12. According to the court in *Stalker*, the appellate courts apply the same formulation of stare decisis as the Supreme Court. *Id.* Accordingly, a prior appellate decision should not be rejected unless it is "both incorrect and harmful." *Id.* at 812.

I generally agree with this approach. Although we lack the ability to overrule a prior appellate decision, *Grisby v. Herzog*, 190 Wn. App. 786, 808-09, 362 P.3d 763 (2015), we should follow the Supreme Court's lead in recognizing the importance of both the "incorrect" and "harmful" prongs of stare decisis.

There can be little debate over the importance of finding a prior decision incorrect prior to changing course. It is inconceivable that an appellate court would deviate from a prior decision without first concluding that decision was incorrect. No amount of perceived harm can justify promulgating a newly minted incorrect legal rule. If a given

4

rule is harmful but nevertheless correct, the proper remedy lies with the legislature, not the judiciary.

The harm component of stare decisis is more controversial. Yet it is critical. Without an assessment of harm, the doctrine of stare decisis has little significance. It is the question of harm that makes application of stare decisis a pragmatic exercise, focused on enhancing stability in the law, rather than simply analytic purity. *See, e.g., Dickerson v. United States*, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000); *Planned Parenthood v. Casey*, 505 U.S. 833, 854-61, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). The need to assess harm is what gives weight to our precedents and ensures they will not be easily overturned.

Although fidelity to stare decisis means always delving into the issue of harm, the manner in which harm should be assessed is different in our court than it is in the Supreme Court. There is value to our appellate panels engaging in rigorous debate over the interpretation of our state's laws prior to the Supreme Court issuing a final decision. Mark DeForrest, *In the Groove or in a Rut? Resolving Conflicts Between the Divisions of the Washington State Court of Appeals at the Trial Court Level*, 48 GONZ. L. REV. 455, 505 (2012/13). When it comes to issues of legal process such as what level of scrutiny to apply to a constitutional claim, *State v. Danis*, 64 Wn. App. 814, 819, 826 P.2d 1096 (1992), the scope of the prior conviction exception to the Sixth Amendment's jury trial

5

right,[1] *State v. Hochhalter*, 131 Wn. App. 506, 520-22, 128 P.3d 104 (2006), and eligibility for attorney fee awards, *King*, 100 Wn. App. at 560-61, there is little public disruption or harm caused by discordant decisions from our court. *See Payne v. Tennessee*, 501 U.S. 808, 828, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991). Such inconsistencies may be frustrating to a superior court judge, tasked with deciding which binding opinion to follow. DeForrest, 48 GONZ. L. REV. at 509. Nevertheless, they are not insurmountable. *Id.* There is great value to getting the law correct, especially when doing so vindicates individual rights. *See, e.g., Grisby*, 190 Wn. App. at 811. Often the goal of righting past wrongs justifies deviating from past decisions.

But the harm caused by changing course is sometimes salient. When it comes to rules applicable outside of court proceedings, governing how ordinary people and businesses conduct their day to day affairs, there are substantial costs to deviating from prior decisions. Published case law in areas such as real property, contract, and criminal law are relied on by the public and impact liberty and property interests. *See, e.g., Payne*, 501 U.S. at 828; *House v. Erwin*, 83 Wn.2d 898, 909, 524 P.2d 911 (1974). Overturning such cases can cause substantial harm to individuals who are simply trying to follow the law. In such circumstances, it may be better to be consistent than right.

---

[1] U.S. CONST. amend. VI

No. 34018-0-III
*In re Pers. Restraint of Arnold*

As set forth in the majority decision, the potential inequities presented by this case highlight the importance of applying the harm component of stare decisis across the different divisions of our court. Our Supreme Court may ultimately agree with the dissent and find *Taylor* and *Wheeler* wrongly decided. Should it do so, it will be empowered to overrule those decisions and provide consistent relief. But we cannot. I therefore join the decision to maintain *Taylor* and *Wheeler* and vote to reverse Mr. Arnold's conviction.

_____
Pennell, J.

7

SIDDOWAY, J. (concurring) — As explained in the majority opinion, the harm that will ensue if we do not follow the decisions of our fellow divisions in *State v. Taylor*, 162 Wn. App. 791, 259 P.3d 289 (2011) and *In re Personal Restraint of Wheeler*, 188 Wn. App. 613, 354 P.3d 950 (2015) is a compelling consideration and a sufficient reason to follow that authority and grant Eddie Arnold's personal restraint petition.

When it comes to whether our Supreme Court's "incorrect and harmful" standard applies in this court, I agree with the reasoning of *Grisby v. Herzog* that it does not. 190 Wn. App. 786, 808-09 & n.6, 362 P.3d 763 (2015). It is not inappropriate for this court to consider whether a previous opinion is incorrect and harmful in the course of deciding whether or not to follow it, but since we do not overrule prior decisions, "it is not obligatory for this court to use . . . a standard developed by the highest state court for its own use in determining whether to overrule one of its own decisions." *Id.* at n.6 (referring to the contrary position in *State v. Stalker*, 152 Wn. App. 805, 219 P.3d 722 (2009) as "dicta"). Among other differences, decisions to which our Supreme Court applies stare decisis were decided by no less than 5 of its 9 members. Decisions within our court that we heed, but with which we sometimes disagree, are reached by 3, and sometimes only 2, of our 22 members.

I conclude that justice is best served by deciding this case consistently with *Taylor* and *Wheeler,* recognizing that the State may seek review by our Supreme Court.

Siddoway, J.

_____
Siddoway, J.

No. 34018-0-III

LAWRENCE-BERREY, A.C.J. (dissenting) — The majority adopts a stare decisis

rule for future Court of Appeals panels to apply. The rule prevents correcting a prior

holding unless the panel determines that the prior holding is both incorrect and harmful.

For purposes of my dissent, I will accept the majority's rule. I dissent because the

holdings of *Taylor*[1] and *Wheeler*[2] are incorrect and harmful.

A.    *TAYLOR* AND *WHEELER* ARE INCORRECT

Statutory interpretation is a question of law reviewed de novo. *Taylor*, 162 Wn.

App. at 797. The court's goal is to discern and implement the legislature's intent. *Id.*

When interpreting a statute, courts first look to the statute's plain meaning. *Id.* This

court discerns plain meaning "from the ordinary meaning of the language at issue, the

context of the statute in which that provision is found, related provisions, and the

statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d

228 (2007).

---

[1] *State v. Taylor*, 162 Wn. App. 791, 259 P.3d 289 (2011).

[2] *In re Pers. Restraint of Wheeler*, 188 Wn. App. 613, 354 P.3d 950 (2015).

Prior to discussing *Taylor* and *Wheeler*, it is important to understand the

progression of Washington's child rape statutes and the requirement that certain sex

offenders register.

1.    *Background of Washington's child rape statutes*

For most of the 1900s, Washington criminalized adults engaging in sex with

minors by its "carnal knowledge" statute. *See* former RCW 9.79.020 (1974). It provided

that a person who "carnally [knew]" a child under 18 years old would be imprisoned for

up to 15 years, up to 20 years, or up to life, depending on the child's age. *See* former

RCW 9.79.020(1)-(3).

In April 1975, the legislature repealed the carnal knowledge statute and replaced it

with three degrees of statutory rape. *See* LAWS OF 1975, 1st Ex. Sess., ch. 14, §§ 7-9,

10(2); *see also* former RCW 9.79.200, .210, and .220 (1975). The newly-enacted second

degree statutory rape law provided:

> (1) A person over sixteen years of age is guilty of statutory rape in the
> second degree when such person engages in sexual intercourse with another
> person, not married to the perpetrator, who is eleven years of age or older
> but less than fourteen years old.

Former RCW 9.79.210(1) (1975). Its effective date, along with the other statutory

rape provisions, was September 8, 1975. *See* LAWS OF 1975, pg. ii, "Effective

Date of Laws." (Capitalization omitted.)

Less than one year after enacting the statutory rape provisions in chapter 9.79

RCW, the legislature enacted the Washington Criminal Code, Title 9A RCW, effective

2

July 1, 1976. *See* LAWS OF 1975, 1st Ex. Sess., ch. 260. However, all sex crimes remained codified in chapter 9.79 RCW. *See* former ch. 9.79 RCW (1976).

In 1979, the legislature recodified the three statutory rape provisions, moving them from Title 9 RCW to Title 9A RCW. *See* LAWS OF 1979, 1st Ex. Sess., ch. 244, §§ 17-18; *see also* former RCW 9A.44.070, .080, and .090 (1979). The legislature changed the language grading the offenses, but otherwise left them the same. *See* LAWS OF 1979, 1st Ex. Sess., ch. 244, §§ 4-6.

In 1988, the legislature repealed the provisions defining the three degrees of statutory rape, and replaced them with three degrees of the crime of rape of a child, RCW 9A.44.073, .076, and .079. *See* LAWS OF 1988, ch. 145, §§ 2-4, 24. The house bill report described the changes to the statute as follows: "The crimes of statutory rape are renamed, moved up one level in the SRA's [Sentencing Reform Act of 1981, chapter 9.94A RCW] sentencing grid and modified with respect to the ages of victims and offenders. . . . Statutory rape is renamed 'rape of a child.'" H.B. REP. ON H.B. 1333, 50th Leg., Reg. Sess. (Wash. 1988).

RCW 9A.44.076(1) defines the current crime of second degree rape of a child:

A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

2.    *Background of Washington's sex offender registration statute*

In 1990, the legislature passed the "Community Protection Act," which required any resident who had been convicted of a "sex offense" to register. LAWS OF 1990, ch. 3, § 402(1); former RCW 9A.44.130(1) (1990). It defined "sex offense" as any offense defined as a "sex offense" in the SRA. *See* LAWS OF 1990, ch. 3, § 402(5). The SRA defined a "sex offense" in relevant part as "[a] felony that is a violation of chapter 9A.44 RCW." Former RCW 9.94A.030(29)(a) (1990). The registration requirement applied to crimes committed after the effective date of the statute and also applied retroactively for offenders who were incarcerated or under supervision when the statute became effective. *See* S.B. REP. ON SUBSTITUTE S.B. 6259, 51st Leg., Reg. Sess. (Wash. 1990).

In 1999, the "Sentencing Guidelines Commission" recommended technical corrections for the criminal code to the legislature. S.B. REP. ON H.B. 1544, at 1, 56th Leg., Reg. Sess. (Wash. 1999). One of the recommendations was to amend the definition of "sex offense" in the SRA. *Id.* at 2. The legislature amended the definition to add that "sex offense" also meant "[a]ny conviction for a felony offense in effect at any time prior to July 1, 1976, that is comparable to a felony classified as a sex offense in (a) of this subsection." LAWS OF 1999, ch. 352, § 8(33)(b).

3.    *The* Taylor *and* Wheeler *cases*

In *Taylor*, Division One considered whether a person has a duty to register when he or she has previously been convicted for violating the repealed statutory rape provisions. *Taylor*, 162 Wn. App. at 794-800. In 1988, Homer Taylor pleaded guilty to

4

third degree statutory rape under former RCW 9A.44.090 (1979). *Taylor*, 162 Wn. App. at 793-94. As discussed above, the legislature then repealed that statute later that year. *Id.* at 795-96. In 2009, the State charged Mr. Taylor with failure to register as a sex offender, listing his predicate offense as the 1988 statutory rape conviction. *Id.* at 794 n.1. The trial court found him guilty as charged. *Id.* at 794.

The *Taylor* court reversed Mr. Taylor's conviction for failure to register, holding that he was not required to register because his 1988 statutory rape conviction was not a "sex offense" for which the SRA required registration. *Id.* at 800. The court reasoned that the plain language of former RCW 9.94A.030(46)(a)(i) (2008) only applied to sex offenses *currently* listed in chapter 9A.44 RCW. *Taylor*, 162 Wn. App. at 799.

The court then acknowledged that the 1999 amendment extended the registration requirement to individuals who had convictions for any comparable felony offense that existed prior to July 1, 1976. *Id. Importantly, the* Taylor *court assumed the legislature enacted the third degree statutory rape statute in 1979. Id.* at 799. Under this assumption, the court reasoned that the legislature failed to extend the registration requirement to statutory rape convictions. *Id.* The court concluded this resulted in a legislative "gap." *Id.* Recognizing this gap was likely inadvertent, the court nevertheless declined to fill the gap in the absence of legislative authority. *Id.*

In *Wheeler*, Division Two considered the exact same issues from *Taylor*, but in the context of a personal restraint petition (PRP). *Wheeler*, 188 Wn. App. 613. In 1985, Michael Wheeler was convicted of third degree statutory rape. *Id.* at 616. In 2000, he

5

pleaded guilty to failure to register, with his statutory rape conviction as the predicate offense. *Id.* In 2013, he moved to withdraw his guilty plea, arguing that under *Taylor* his failure to register conviction was unlawful. *Id.* The trial court transferred the case to the Court of Appeals for consideration as a PRP. *Id.*

The State asked Division Two to disagree with *Taylor*. *Wheeler*, 188 Wn. App. at 619. It argued the *Taylor* court relied on an improper interpretation of the word "is" in the sex offense definition. *Id.* It further argued that it was more reasonable to read the word "is" broadly and conclude that the legislature intended that any crime that was at any time included in chapter 9A.44 RCW "is" a sex offense. *Id.* at 619-20. The State cited the policy statement underlying the registration statute, which notes the high risk of reoffense that sex offenders pose and the need to assist local law enforcement agencies in protecting their communities. *Id.* at 620 (citing LAWS OF 1990, ch. 3, § 401).

The *Wheeler* court rejected these arguments. *Id.* at 620-21. It also reasoned the 1999 amendment "shows the legislature's ability to tailor the definition to include offenses other than those currently classified as sex offenses under the SRA." *Id.* at 620. The court further reasoned that despite Division One's holding in *Taylor*, the legislature had not amended the sex offense definition to include repealed felonies. *Id.* at 621.

4.  *Persons convicted of statutory rape are required to register as sex offenders*

In June 1988, Mr. Arnold pleaded guilty to second degree statutory rape. In addition to five previous times, Mr. Arnold failed to register as a sex offender between

May 2013 and October 2013. The State charged Mr. Arnold with failure to register based on his 1988 second degree statutory rape conviction. Although the legislature repealed the statutory rape provisions, its 1999 amendment made it possible for repealed felonies to still constitute "sex offenses" triggering the registration requirement. Under this amendment, Mr. Arnold would be required to register if he had "[a]ny conviction for a felony offense in effect at any time prior to July 1, 1976, that is comparable to a felony classified as a sex offense in (a) of this subsection." RCW 9.94A.030(47)(b).

The *Taylor* court assumed that the statutory rape laws were enacted in 1979. Given this assumption, the *Taylor* court determined statutory rape convictions fell into a "gap" in the registration requirement between convictions for offenses in effect prior to 1976 and convictions for felonies that are current violations of chapter 9A.44 RCW. However, this "gap" does not exist. This is because Washington's statutory rape laws went into effect in September 1975, not 1979. *See* LAWS OF 1975, 1st Ex. Sess., pg. ii. Because the legislature enacted the statutory rape provisions in 1975, Mr. Arnold's second degree statutory rape conviction meets the first requirement of subsection (b)—it was a "felony offense in effect . . . prior to July 1, 1976." RCW 9.94A.030(47)(b).

The second requirement for subsection (b) is that the former felony offense be comparable to a current felony classified as a sex offense. Here, second degree statutory rape is most comparable to second degree rape of a child, codified at RCW 9A.44.076(1). I note there are a couple differences between second degree statutory rape and second degree rape of a child, both quoted above. For instance, the span of the victim's age is

7

somewhat different, and second degree rape of a child includes a requirement that the perpetrator be 36 months older than the victim.

I would nevertheless conclude that all statutory rape and child rape offenses are comparable for purposes of RCW 9.94A.030(47)(b). First, these offenses separate child rape offenses into three distinct categories based upon the age of the child. Second, these offenses criminalize the same type of deviant conduct.

Third, RCW 9.94A.030(47)(b) must mean something. Many felony sex offenses in effect prior to July 1, 1976 lack modern counterparts and are therefore not comparable to a current felony classified as a sex offense.[3] Those that have modern counterparts are rape, statutory rape, incest, and indecent liberties.[4] Of these, all but statutory rape were already classified as sex offenses in the SRA prior to the 1999 amendment.[5] Therefore, the only purpose for the legislature to add RCW 9.94A.030(47)(b) would be to include statutory rape offenses in the definition of "sex offense."

I would conclude that Mr. Arnold's conviction for second degree statutory rape is comparable to today's second degree child rape, and that Mr. Arnold is required to register as a sex offender. For this reason, I would dismiss his PRP.

---

[3] *See* former RCW 9.79.040 (1974) (compelling a person to marry); former RCW 9.79.050 (1974) (abduction); former RCW 9.79.060 (1974) (placing persons in house of prostitution); former RCW 9.79.070 (1974) (seduction); former RCW 9.79.100 (1974) (sodomy); former RCW 9.79.110 (1974) (adultery).

[4] *See* former ch. 9.79 RCW (1975) (rape; statutory rape); former RCW 9A.88.100 (1975) (indecent liberties); former RCW 9A.64.020 (1975) (incest).

[5] *See* former RCW 9.94A.030(33)(a) (1998) (defining "sex offense" as a "felony that is a violation of chapter 9A.44 RCW or RCW 9A.64.020"); chapter 9A.44 RCW (1998) (rape; indecent liberties); RCW 9A.64.020 (1998) (incest).

B.    NOT REQUIRING PERSONS CONVICTED OF STATUTORY RAPE TO REGISTER AS SEX OFFENDERS IS HARMFUL

I need look no further than a legislative pronouncement to conclude that unregistered sex offenders pose clear harm to the people of our state:

> The legislature finds that sex offenders often pose a high risk of reoffense, and that law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders who commit sex offenses, are impaired by the lack of information available to law enforcement agencies about convicted sex offenders who live within the law enforcement agency's jurisdiction. Therefore, this state's policy is to assist local law enforcement agencies' efforts to protect their communities by regulating sex offenders by requiring sex offenders to register with local law enforcement agencies . . . .

LAWS OF 1990, ch. 3, § 401.

Because of *Taylor* and *Wheeler*, persons convicted of raping children before July 1988 are not required to register as sex offenders. The clear error in *Taylor* and *Wheeler* puts children in our state at a heightened risk and is thus clearly harmful. The majority's determination that *Taylor* and *Wheeler* are not harmful stands in contrast to the legislature's determination.

Not only do I invite our Supreme Court to address whether *Taylor* and *Wheeler* are incorrect, but I invite the Supreme Court to clarify the role of stare decisis in the Court of Appeals. As stated by Thomas Jefferson, "[A] little rebellion now and then is a good thing." Letter from Thomas Jefferson to James Madison (Jan. 30, 1787), *in* 5 THE WORKS OF THOMAS JEFFERSON 256 (Paul Leicester Ford ed., Fed. ed. 1904). The Court of Appeals should not be hampered if one panel aspires to correct a rule that is clearly

9

wrong. Through such a disagreement, the Supreme Court can weigh the merits of the

conflict and determine the correct rule.

Lawrence-Berrey, A.C.J.