# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  50785-4-II |
| PAUL BUFALINI | UNPUBLISHED OPINION |

BJORGEN, J — Paul Bufalini seeks relief from personal restraint following the Department of Correction's (DOC) revocation of his drug offender sentencing alternative (DOSA) sentence. He argues that (1) DOC violated his due process rights by failing to inform him that he had the right to have a request to be represented by counsel considered on a case-by-case basis at his urinalysis (UA) violation hearing, (2) DOC improperly applied RCW 9.94A.662(3), (3) his UA test was so unreliable that reliance on its results violates due process, (4) DOC's failure to preserve his UA test sample violates due process, and (5) RCW 9.94A.662(3) violates separation of powers.

We hold that (1) DOC violated Bufalini's due process rights by failing to inform him that he could have his request for counsel considered on a case-by-case basis at his UA violation hearing and (2) RCW 9.94A.662(3) does not offend the separation of powers.  Therefore, we grant the petition and vacate the DOC decisions on Bufalini's alleged UA violation and revocation of his DOSA.  We order that Bufalini be promptly released from confinement and transferred to community custody status under his DOSA.  We also order that all time Bufalini

spends in total confinement beyond the 36.75 month initial term of confinement under his DOSA be credited against his DOSA community custody term. If it wishes, the DOC may begin again its process in response to the allegation of the UA violation, but must do so consistently with this opinion and with any other governing law. With this resolution, we do not reach Bufalini's other challenges in his personal restraint petition (PRP).

FACTS

On January 14, 2015, the State charged Bufalini by amended information with first degree identity theft, second degree identity theft, second degree possession of stolen property, second degree vehicle prowling, forgery, unlawful possession of a controlled substance, unlawful possession of payment instruments, and three counts of bail jumping. The same day, Bufalini entered a plea of guilty on all counts. As part of his sentence, Bufalini was given a DOSA comprising 36.75 months in confinement followed by 36.75 months in community custody. Bufalini's judgment and sentence further stated that:

> An offender who fails to complete the special drug offender sentencing alterative program or who is administratively terminated from the program shall be reclassified to serve the unexpired term of the sentence as ordered by the sentencing judge.

Resp't Response to PRP, Ex. 1. Bufalini's judgment and sentence was dated January 14, 2015.

On August 11, 2016, Bufalini signed an acknowledgment of drug and alcohol testing as a condition of his work release while still in confinement. The acknowledgement stated in part:

> I acknowledge that I am required to produce a test sample. . . . [I]f I provide a sample that tests positive for an unauthorized substance, I will be subject to a violation, and my custody level and any pending transfers may be impacted.

Resp't Response to PRP, Ex. 2.

On December 10 or 11, Bufalini spent the day at his parents' home after his father picked him up from his work release facility, Progress House. While at his parents' home, Bufalini took

two Aleve tablets for a headache, and several hours later Bufalini's father drove him back to Progress House. Either that same day or the day after, the staff informed Bufalini that he would need to submit to a random UA test. Bufalini produced a sample, which tested positive for morphine or opiates. Another staff member confirmed the positive UA result, Bufalini initialed the sample, and the staff stored the sample in a refrigerator. The staff denied Bufalini the opportunity to submit another UA.

On December 19, Bufalini received a notice of an allegation against him. The notice stated that Bufalini was accused of violating DOC Policy 752, "[r]eceiving a positive test for use of unauthorized drugs, alcohol, or other intoxicants." Resp't Response to PRP, Ex. 7. The notice also informed Bufalini of his rights regarding the hearing on the allegation, but did not inform Bufalini that he had the right to have DOC make an individual determination of whether he could be represented by counsel at his infraction hearing. In fact, Bufalini was told by DOC staff prior to his hearing that he was not entitled to have an attorney present at his first hearing.

On December 20, an administrative hearing was held on the allegation that Bufalini produced a positive UA test. Community Custody Officer (CCO) Kelly Dean testified at the hearing and submitted Bufalini's incident report stating that he had produced a positive UA test. Bufalini acknowledged that "the test shows that I yielded a positive UA," but maintained that he had not consumed any prohibited narcotics. Second Decl. of Lobsenz in Support of PRP, App. A at 19. The hearing examiner adjudicated Bufalini guilty of producing a positive UA test for unauthorized drugs, terminated Bufalini from work release, and imposed a loss of 20 days' good conduct time. On December 23, Bufalini appealed the decision to the DOC Appeals Board (Appeals Board).

On January 4, 2017, Bufalini attended a hearing on a second matter: whether to revoke his DOSA sentence for failing to complete or administrative termination from a treatment program. Bufalini was charged with violating DOC Policy 762, "[f]ailing to complete or administrative termination from DOSA substance abuse treatment program," on or about December 15, 2016. Resp't Response to PRP, Ex. 10. At the hearing, CCO Dean testified that she received a discharge summary stating that Bufalini was terminated from his chemical dependency program on December 15, 2016. Second Decl. of Lobsenz in Support of PRP, App. B at 8. CCO Dean stated that she had explained to Bufalini that "any infraction at Progress House work release would then terminate him from treatment." Second Decl. of Lobsenz in Support of PRP, App. B at 9. CCO Dean further explained that under DOC policy, if an offender fails to complete or is administratively terminated from a court ordered substance abuse program, then DOC must revoke the offender's DOSA. Bufalini's father also testified at the hearing, stating that he did not believe that Bufalini had committed the UA infraction and questioned the reliability of the UA testing process. The hearing examiner found that Bufalini was terminated from his treatment program but deferred determining Bufalini's sanction pending the resolution of his appeal before the Appeals Board.

On January 9, 2017, the Appeals Board affirmed the December 20, 2016 hearing examiner decision that Bufalini had a positive UA test. On January 31, a hearing examiner revoked Bufalini's DOSA. The same day, Bufalini appealed the revocation to the Appeals Board. On February 3, Bufalini's father sent a letter to the hearing examiner in support of Bufalini's appeal. On February 8, Dominga Soliz, a DOC hearing examiner, sent a reply to Bufalini's father, which stated, "I've reviewed [Bufalini's] hearing and sanction imposed on

January 31, 2017. His hearing is remanded. A new hearing will be scheduled immediately and he will be notified." PRP of Bufalini, App. H.

On February 22, Bufalini attended the hearing on remand before a different hearing examiner. Initially, the hearing examiner was unclear about the scope of the remand order. The hearing examiner contacted Soliz and determined that she had only remanded Bufalini's hearing from January 4, the DOSA revocation. The hearing examiner then considered whether to permit Bufalini to be represented by counsel. After determining that Bufalini was competent to defend himself at the hearing, the hearing examiner permitted Bufalini to call his father as a witness to help explain whether the complexities of Bufalini's hearing merited representation by counsel. Bufalini's father testified that he had also spoken to Soliz and that she had told him that the remand extended to Bufalini's UA violation hearing. After hearing testimony from Bufalini's father, the hearing examiner continued the hearing in order to confirm the scope of the remand with Soliz.

The continued hearing reconvened on March 1. The hearing examiner stated that he had contacted Soliz and confirmed that the scope of the remand included only the January 4 hearing on whether to revoke Bufalini's DOSA sentence. The hearing examiner further determined that Bufalini was not entitled to representation because his January 4 hearing did not present any unusually complex issues and that Bufalini was competent to represent himself. The hearing examiner determined that Bufalini had failed to complete or was administratively terminated from a DOSA treatment program, and revoked Bufalini's DOSA.

On March 7, Bufalini appealed the revocation of his DOSA. On April 4, the Appeals Board denied Bufalini's appeal. On August 23, Bufalini filed this PRP.

5

ANALYSIS

I. STANDARD OF REVIEW

To obtain relief through a PRP, a petitioner must generally "establish that a constitutional error has resulted in actual and substantial prejudice, or that a nonconstitutional error has resulted in a fundamental defect which inherently results in a complete miscarriage of justice." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004). However, if a petitioner did not have an opportunity for prior judicial review, then the heightened threshold requirements applicable to PRPs do not apply, and he need only demonstrate that he is restrained under RAP 16.4(b)[1] and that the restraint is unlawful under RAP 16.4(c).[2] *Id*. at 299. Bufalini has not had a prior opportunity for judicial review of his DOSA revocation. Therefore, he must establish that (1) he is restrained and (2) his restraint is unlawful. The parties do not dispute that Bufalini was restrained.

II. REPRESENTATION BY COUNSEL

A. DOC's Failure To Consider Bufalini's Representation at UA Violation Hearing

Bufalini argues that DOC violated his due process rights by failing to consider whether to allow him to be represented by counsel at his UA violation hearing. We agree.

---

[1] RAP 16.4(b) states,
> A petitioner is under a "restraint" if the petitioner has limited freedom because of a court decision in a civil or criminal proceeding, the petitioner is confined, the petitioner is subject to imminent confinement, or the petitioner is under some other disability resulting from a judgment or sentence in a criminal case.

[2] RAP 16.4(c) states, in part,
> The restraint must be unlawful for one or more of the following reasons:
> . . . .
> (6) The conditions or manner of the restraint of petitioner are in violation of the . . . laws of the State of Washington.

Under the federal due process clause, DOC has "'a clear duty to consider the right to counsel on a case-by-case basis in community custody violation hearings.'" *In re Pers. Restraint of Schley*, 197 Wn. App. 862, 871, 392 P.3d 1099 (quoting *Grisby v. Herzog*, 190 Wn. App. 786, 811, 362 P.3d 763 (2015)), *review granted*, 189 Wn.2d 1001 (2017). In *Schley*, the petitioner was found guilty of a fighting infraction, which led to his administrative termination from his chemical dependency program. 197 Wn. App. at 866. DOC then revoked Schley's DOSA and reclassified him to serve the remainder of his time in total custody. *Id*. at 866. In reaching its decision, *Schley* observed that:

> The inescapable result of [the finding of guilty as to the fighting infraction] was Schley's termination from his chemical dependency treatment program. Termination from the chemical dependency treatment program led to a DOSA revocation hearing at which revocation of Schley's DOSA sentence was the only possible outcome.
> . . . .
> Schley's DOSA was functionally revoked once he was found guilty of fighting . . . at the infraction hearing.

197 Wn. App. at 868.

The court also rejected DOC's argument that any failure to inform Schley of his right to have a request for counsel considered on a case-by-case basis was harmless. *Id*. at 872. DOC maintained that Schley's request would have been denied because the only issue at his DOSA revocation hearing was whether he had been administratively terminated from his treatment program. *Id*. at 872. Although the court agreed that the issues at the DOSA revocation were not complex, it explained that "[the factual issues underlying the fighting allegation] are more complex than the limited issue of whether Schley was terminated from treatment." *Id*. at 872.

*Schley* follows a line of federal and state cases extending the right to procedural due process to decisions affecting those in confinement or restraint. *Morrissey v. Brewer*, 408 U.S. 471, 481-82, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), held that revoking parole without a hearing

violated the parolees' right to procedural due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), extended the *Morrissey* rule to the revocation of probation. Division One of our court then applied *Morrissey* and *Scarpelli* to the revocation of the community custody portion of a DOSA in *Grisby*, 190 Wn. App. at 806.

In *Morrissey*, 408 U.S. at 481-82, *Scarpelli*, 411 U.S. at 782, and *Grisby*, 190 Wn. App. at 799-800, the protections of due process were triggered by the loss of liberty at stake. More specifically, *Grisby* held that

> [a] convicted offender who is subject to restriction but not living behind bars has a greater liberty interest than a prison inmate, and the more rigorous *Morrissey* requirements apply. Thus, *Morrissey* applies when an offender in community custody faces allegations by the Department that may result in his being returned to total confinement.

190 Wn. App. at 799-800.

When he produced a positive UA, Bufalini had been transferred to a work release facility, but was not yet on community custody. The DOC characterizes this as partial confinement pursuant to RCW 9.94A.030(36). As a result of the DOSA revocation, Bufalini was returned to total confinement in prison. Thus, the DOSA revocation affected Bufalini's liberty as much as the DOSA community custody revocation in *Grisby*. With that, the analysis and reasoning in *Grisby* and *Schley* also apply to Bufalini's situation.

The circumstances surrounding Bufalini's PRP parallel those in *Grisby* and *Schley*. Prior to Bufalini's hearing on the UA violation, he was told that he could not request counsel. Bufalini was found guilty of testing positive for a UA, which resulted in his termination from his treatment program. Under DOC policy, termination from a treatment program essentially results in an automatic revocation of a DOSA sentence. Therefore, Bufalini's DOSA was "functionally revoked" when he was found guilty at the UA violation hearing. *In re Schley*, 197 Wn. App. at

868. As in *Grisby* and *Schley*, because a finding of guilt at the UA hearing necessarily would lead to a revocation of Bufalini's DOSA sentence, DOC was required to inform Bufalini that he could have his request to be represented by counsel considered on a case-by-case basis at the UA violation hearing.

B.      Harmlessness

DOC argues that any due process violation in this case is harmless because the hearing examiner at Bufalini's DOSA revocation hearing considered whether to appoint him counsel. DOC contends that *Schley* only held that a DOC has a duty to consider a request for counsel on a case-by-case basis at a DOSA revocation hearing. This view, however, ignores that the reasoning of *Schley* and *Grisby* leads directly to the requirement that DOC consider the right to counsel on a case-by-case basis at hearings where a finding of guilt would lead to the revocation of a DOSA. The UA hearing was of that sort. Therefore, DOC's harmlessness argument fails.

For these reasons, we hold that Bufalini's restraint is unlawful because DOC failed to inform him that he could have a request to be represented by counsel considered on a case-by-case basis at the UA violation hearing.

C.      Bufalini's Right To Representation at the UA Hearing

A possible remedy for DOC's failure to inform Bufalini that he could have his request to have counsel present considered on a case-by-case basis is to hold another UA violation hearing at which that advisement would be given. However, Bufalini has pointed out that his estimated prison release date on his challenged sentence is February 20, 2019. The longer the administrative process before DOC, the less effective and meaningful is any relief he may ultimately win. To help hasten that process, we turn to the question of whether Bufalini is in fact entitled to legal representation at any UA hearing DOC may hold in this matter.

9

Among the safeguards due process requires at the hearing required in *Morrissey* are written notice of the claimed violations, disclosure of evidence against the offender, the opportunity to be heard in person and to present witnesses and documentary evidence, the opportunity to confront and cross-examine adverse witnesses, a neutral hearing body, and a written statement by the fact finders as to the evidence relied on and reasons for revocation. *Morrissey*, 408 U.S. at 487-89. The *Gagnon* Court further recognized that "the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." 411 U.S. at 786. *Grisby* added that under *Gagnon*, due process requires the DOC to make a case-by-case determination as to whether counsel should be appointed and that the determination focuses on the need for counsel. *Grisby*, 190 Wn. App. at 798, 806.

As shown above, the revocation of Bufalini's DOSA affected his liberty as much as the DOSA community custody revocation in *Grisby*. Because the reduction of liberty triggered the extensions of the right to procedural due process in *Grisby*, *Morrissey*, and *Scarpelli*, we look to the considerations just summarized from those cases in determining whether Bufalini is entitled to counsel.

Turning to those considerations, Bufalini has raised issues whether the positive UA was caused by his taking Aleve, whether any violation was willful, whether the UA test was unreliable, and whether the urine sample on which the UA was done was destroyed or inadequately preserved in violation of due process. These are potentially complex factual inquiries. A critical part of the due process guaranteed by *Morrissey* and its progeny is the presentation of witnesses and documentary evidence and the opportunity to confront and cross-examine adverse witnesses. *Morrissey*, 408 U.S. at 487-89. Without an attorney, Bufalini's

10

exercise of these rights in trying his issues would be severely compromised. Without an attorney, the guarantees of due process would in effect be met through something close to a pantomime. Under *Grisby*, *Morrissey*, and *Scarpelli*, the complexity of the issues and Bufalini's need for legal assistance speaks with one voice. He is entitled to his own attorney at the UA hearing if DOC decides to proceed with one.[3]

D.    Bufalini's Right To Representation at Any DOSA Revocation Hearing

Under the same authority and for the same reasons discussed above for the UA hearing, DOC is also required to inform Bufalini that he could have his request to be represented by counsel considered on a case-by-case basis at any DOSA revocation hearing. However, without knowing the resolution of the various UA issues Bufalini may raise in a proceeding in which he has the right to counsel, we do not decide whether he in fact is entitled to representation at a DOSA revocation hearing. That determination would be made consistently with the analysis above.

E.    Bufalini's Status

Because the DOC hearings and decisions finding that Bufalini produced a positive UA test for unauthorized drugs, terminating him from work release, and revoking his DOSA

---

[3] *In re Personal Restraint Petition of McKay*, 127 Wn. App. 165, 168, 110 P.3d 856 (2005), held that in a custodial hearing for revocation of a DOSA the DOC must carry its burden of proof by a preponderance of the evidence. As shown above, the critical stage in Bufalini's DOSA revocation was the hearing and decision on the UA violation. Therefore, at both Bufalini's UA violation hearing and any resulting DOSA revocation hearing, the DOC carries the burden of proof by a preponderance of the evidence. This same conclusion was reached by the *Schley* court in holding that DOC violated Schley's due process rights by using the lesser "some evidence" standard. *Schley*, 197 Wn. App. at 870.

deprived Bufalini of procedural due process, we vacate those decisions. With the vacation of those decisions, Bufalini's status returns to that immediately prior to these decisions.

As noted, on January 14, 2015, Bufalini was given a DOSA comprising 36.75 months in confinement followed by 36.75 months in community custody. Thus, in the absence of his vacated decisions, Bufalini would have begun the community custody phase of his DOSA in the first half of February 2018. Consequently, Bufalini's status as of the issuance of this opinion is one of serving the community custody phase of his DOSA. Therefore, under RAP 16.15(b) we order that Bufalini be promptly released from confinement and transferred to community custody status under his DOSA.[4] To further return Bufalini to the status he would have had without the vacated decisions, we order also that all time Bufalini spends in total confinement beyond the 36.75 month initial term of confinement under his DOSA be credited against his DOSA community custody term.

### III. OTHER CLAIMS

With the decision above, it is not necessary to consider Bufalini's other claims, with one exception. Because it is a generally applicable challenge, we consider his claim that under *State ex rel. Schillberg v. Cascade District Court*, 94 Wn.2d 772, 621 P.2d 115 (1980), DOC's revocation of his DOSA under RCW 9.94A.662(3) violates separation of powers.

*Schillberg* considered whether the superior court could order a deferred prosecution absent the consent of the prosecutor under former RCW 10.05.030 (1975). 94 Wn.2d at 775.

---

[4] This conclusion is consistent with *In re Personal Restraint of Dyer*, 157 Wn.2d 358, 369, 139 P.3d 320 (2006). In *Dyer*, the court held that a denial of parole was erroneous and remanded for a new hearing, stating that it cannot make the decision whether parole should be granted in the first instance. 157 Wn.2d at 369. Here, we make no decision as to whether Bufalini's DOSA should be revoked, but simply place him in the status he would now enjoy if the erroneous decisions had not been made.

Under former RCW 10.05.030, the arraigning judge "upon consideration of the [deferred prosecution] petition and with the concurrence of the prosecuting attorney may continue the arraignment and refer such person" to an evaluation for a placement in a drug, alcohol, or mental health facility. The Supreme Court rejected the State's argument that the decision to permit a deferred prosecution was an executive charging decision, instead characterizing the deferred prosecution as "essentially a *sentencing alternative* and therefore at least partially a judicial act." *Id.* at 777-78. The court also noted that "[n]owhere [in the statute] is it provided that the accused petitions the prosecutor." *Id.* at 777. The court further explained that even if the statute was interpreted as a prosecutorial act, the statute "prescribed *no* standards to aid the prosecutor who refuses to recommend an admittedly appropriate candidate for diversion." *Id.* at 780-81. The court held that "[s]ince the current statute permits the prosecutor to arbitrarily 'veto' a discretionary decision of the courts," the part of the statute requiring the prosecutor's consent was unconstitutional because it transgressed the separation of powers. *Id.* at 781.

Bufalini argues that DOC's ability to revoke an offender's DOSA under RCW 9.94A.662(3) allows it to arbitrarily veto a superior court's decision to not revoke a DOSA under former RCW 9.94A.660(7) (2009). Under former RCW 9.94A.660(7)(c):

> The court may order the offender to serve a term of total confinement within the standard range of the offender's current offense at any time during the period of community custody if the offender violates the conditions or requirements of the sentence or if the offender is failing to make satisfactory progress in treatment.

Bufalini maintains that RCW 9.94A.662(3) allows DOC to arbitrarily veto a sentencing court's decision to not revoke a DOSA sentence for an offender under former RCW 9.94A.660(7)(c) because RCW 9.94A.662(3) provides no standards to guide DOC's decision to revoke a DOSA, similar to the statute at issue in *Schillberg*.

13

Bufalini's reliance on *Schillberg* fails for a number of reasons. First, the superior court in Bufalini's case never made a decision to not revoke a DOSA. Consequently, DOC's revocation did not purport to veto any decision by the superior court and thus did not raise the separation of powers problem present in *Schillberg*.

Second, under RCW 9.94A.662(3), DOC may revoke an offender's DOSA under two conditions. First, an offender may be reclassified "[i]f the department finds that conditions of community custody have been willfully violated." RCW 9.94A.662(3). Second, an offender shall be reclassified if he or she "fails to complete the [substance abuse] program or who is administratively terminated from the [substance abuse] program." RCW 9.94A.662(3). *In re Schley*, 197 Wn. App. at 870 held that DOC must demonstrate a violation by a preponderance of the evidence before revoking a DOSA. Therefore, unlike the prosecutor's decision in *Schillberg*, DOC's decision to revoke a DOSA is subject to specific legislative standards governing when revocation is allowed or required.

For these reasons, DOC's revocation of Bufalini's DOSA did not violate separation of powers based on *Schillberg*.

CONCLUSION

DOC violated Bufalini's due process rights by failing to inform him that he could have his request for counsel considered on a case-by-case basis at his UA violation hearing. Therefore, we grant Bufalini's PRP and vacate the DOC decisions on Bufalini's alleged UA violation and revocation of his DOSA. We order that Bufalini be promptly released from confinement and transferred to community custody status under his DOSA. We also order that all time Bufalini spends in total confinement beyond the 36.75 month initial term of confinement under his DOSA be credited against his DOSA community custody term. If it wishes, the DOC

may begin again its process in response to the allegation of the UA violation, but must do so consistently with this opinion and with any other governing law.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, P.J.

Sutton, J.